No. 2--06--0084                                          filed: 9/13/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| DAVID CHAROUS, | ) | of Lake County. |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 02--D--1028 |
| | ) | |
| JODI CHAROUS, | ) | Honorable |
| | ) | Joseph R. Waldeck, |
|     Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, David Charous, appeals from the trial court's judgment denying his petitions alleging visitation abuse and seeking a finding that respondent, Jodi Charous, was in indirect civil contempt of court for failing to comply with the visitation provisions of the parenting agreement incorporated into the parties' dissolution judgment. On appeal, David contends that (1) the trial court's denial of his petitions was against the manifest weight of the evidence, and (2) the trial court erred in denying his request for attorney fees pursuant to the provisions of the parties' parenting agreement as well as section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508(b) (West 2004)). We reverse and remand for further proceedings.

The parties were married on October 21, 1984.  During the marriage, the parties had two children, Erica, born October 6, 1988, and Daniel, born June 12, 1993.  On November 18, 2003, the trial court entered a judgment dissolving the parties' marriage.  The dissolution judgment incorporated the terms of a parenting agreement entered into between the parties.  Under the terms of the parenting agreement, Jodi was granted sole custody of the children, and David was granted visitation.  The parenting agreement provided that the children were to visit David on alternating weekends and on every Wednesday evening.  Weekend visitation was to begin at 5 p.m. on Friday and conclude at 7:30 p.m. on Sunday.  The children were to be with Jodi and David alternatively on Passover, Memorial Day weekend, the Fourth of July, Labor Day, Rosh Hashanah, Yom Kippur, Thanksgiving, and summer and spring school vacations.  The children were to be with Jodi on her birthday and Mother's Day and were to be with David on his birthday and Father's Day.  The parenting agreement also contained provisions (1) requiring the parties to work together to resolve scheduling conflicts and to cooperate in rescheduling missed visits; (2) prohibiting the parties from withholding visitation because of nonpayment of support or other monetary disputes; (3) prohibiting each party from discussing in the presence of the children issues regarding the marital conflict or perceived deficiencies of the other parent in any regard; (4) prohibiting each party from making disparaging remarks about the other parent or "attempt[ing] to poison the children's minds"; (5) requiring the parties to cooperate in facilitating the disclosure of the children's grades, evaluations, and school records; (6) requiring the children to attend psychological therapy with Dr. Burns; and (7) requiring Jodi to consult with David prior to making any decisions regarding the children's extracurricular activities.

On May 21, 2004, David filed a verified petition for adjudication of indirect civil contempt of court. As subsequently amended, the petition alleged that Jodi had interfered with David's right to visitation with the children. The petition alleged that Jodi consistently "condoned or encouraged" the children to miss their visitation time with David. Specifically, the petition alleged that the children had refused to spend a single night at David's home since the parenting agreement was entered. The petition further alleged that Jodi violated the parenting agreement by regularly discussing in the presence of the children financial disputes between the parties and David's purported refusal to pay for certain expenses. The petition also alleged that Jodi had violated the parenting agreement by removing David's name from the "contact list" at Erica's school, which prevented David from being informed of Erica's grades and school events. The petition sought the entry of an order finding Jodi in indirect civil contempt of court and the entry of appropriate sanctions. The petition also sought the entry of an order requiring Jodi (1) to unconditionally support David's right to visitation and encourage the children to participate in visitation; (2) to desist from scheduling the children's extracurricular activities during David's scheduled visitation without first obtaining David's consent; (3) to refrain from discussing the parties' financial disputes in front of the children; (4) to execute all documents necessary for David to receive communications from the children's schools; and (5) to have the children ready and present when David is scheduled to pick them up for his visitation. David also requested an award of attorney fees and costs incurred in prosecuting the petition.

On May 12, 2005, David filed a petition pursuant to section 607.1 of the Act (750 ILCS 5/607.1 (West 2004)), alleging visitation abuse. The petition alleged that Jodi had willfully and without justification denied him visitation as set forth by the provisions of the

parenting agreement. The violations alleged were similar to those alleged in the previously filed amended petition for adjudication of indirect civil contempt of court. The petition sought the entry of an order (1) entitling David to make-up visitations for missed visits that were the result of Jodi's interference and encouragement of the children to miss visitation with David; (2) requiring Jodi to no longer permit or encourage the children to miss visitation; (3) requiring Jodi to refrain from scheduling extracurricular activities for the children during David's scheduled visitation without first obtaining David's consent; and (4) requiring Jodi to have the children ready and present when David is scheduled to pick them up for visitation. The petition also requested an award of attorney fees and costs incurred in prosecuting the petition.

On May 12, 2005, the trial court conducted an <u>in camera</u> interview of the parties' children. Transcriptions of these interviews appear in the record on appeal, and we will not detail the children's testimony here. We limit our comments to the observation that both children expressed negative feelings about David and indicated that they did not wish to visit him. On June 6, 2005, the trial court entered an order requiring the parties' children to fully comply with the visitation schedule contained in the parenting agreement. The trial court's order further provided that the children's noncompliance with the order would subject them to sanctions.

On October 21, 2005, the trial court conducted a hearing on David's petitions alleging visitation abuse and seeking a finding of contempt. During the hearing, David called Jodi as an adverse witness. Jodi testified that she always had the children ready for visitation with David. Jodi testified that the children did visit David every Wednesday night unless David canceled the visit. Jodi testified, however, that the children sometimes did not

want to visit David and that they would not always go to see him for weekend visitation. Jodi testified that, on these occasions, she made the children call David to tell him that they did not want to visit him. Jodi testified that David nonetheless would drive to her house to pick up the children even when the children had already called to tell him that they were not coming. Jodi testified that she has previously punished Daniel for refusing to visit David by making him stay in his room and taking away his video games.

Jodi testified that Thanksgiving 2003 was the first weekend that the children went to visit David under the parenting agreement. During the weekend, Erica called Jodi from David's house and stated that she was upset and that she did not want to spend the night. David later had a telephone conversation with Jodi and told her not to come to David's house. Jodi nonetheless went to David's house and asked to come inside. Jodi testified that the children were "hovering" in a corner, crying and yelling that they wanted to leave the house. Jodi testified that David and David's mother were yelling back at the children. David told Jodi that everything was alright and asked her to leave the house, but she refused to leave unless she could take the children with her. Jodi acknowledged that the children had never stayed overnight at David's house since that incident.

Jodi further testified that she once planned a surprise birthday party for Erica to take place during a weekend that the children were scheduled to visit David. Jodi never told David about the party and she did not invite him. Jodi also acknowledged that David once asked to reschedule a Wednesday evening visitation because he was having a medical procedure. Jodi refused the request because the children were busy on the day that David wanted to reschedule. Jodi testified that the children were busy with extracurricular activities and that "they have something to do probably every day of the week." Jodi

testified that she was responsible for deciding whether the children would be involved in extracurricular activities and that she permitted the children to be involved in these activities even though they interfered with David's visitation. Jodi also admitted that she once told David that, if he did not pay for Erica's "MYA trip" to Philadelphia, she would tell Erica that it was David's fault that she could not go. Jodi also admitted that she once told David that if he wanted Erica to cancel a babysitting commitment so that she could visit him, he would have to reimburse Erica for the wages she would have earned babysitting. Jodi also acknowledged that, on December 8, 2004, she wrote a letter to Erica's school, instructing that David should be "taken off any list as a contact person or legal guardian." Jodi testified that she did not know if this letter ever "took effect," and that she forwarded to David all correspondence she received from the children's schools. Jodi testified that, although the parenting agreement required that the children were to attend counseling, she stopped scheduling appointments for the children because they did not want to go. Jodi testified that she did not believe that it was important for the children to attend counseling.

Jodi testified that she had never observed the children act in a hostile manner toward David. However, Jodi acknowledged that the children did not want to visit David and that they would tell her that they did not want to go. Jodi testified that she always told the children that they had to visit David and that the children would sometimes act in a hostile manner toward her when she told them this. Jodi testified that she encouraged the children to visit David. Jodi testified that she had packed the children's suitcases for overnight visitation with David on five or six occasions. Jodi testified that she had not done so more frequently because the children were old enough to pack for themselves. Jodi testified that she would always tell the children that they had to pack their suitcases, but

that the children refused to do so. Jodi testified that David cancels Wednesday visitation approximately once a month.

Jodi testified that extracurricular activities were important to the children and that they had been involved in the same activities for the past seven or eight years. Jodi testified that she was not responsible for scheduling the times of Daniel's soccer games and practices. Jodi testified that some of the games and practices take place on her weekends with the children and that others take place on David's weekends. Jodi testified that David had never taken Daniel to soccer practice and that he has attended approximately half of his soccer games. Jodi testified that David had never offered to take Daniel to soccer during his weekend visitation. Jodi testified that Erica schedules her own babysitting jobs and that Jodi does not establish Erica's babysitting schedule.

David testified that he lived in Skokie in a house with his parents. David testified that he always drives to Jodi's house to pick up the children for visitation on alternate weekends. After he arrives, the children come out of Jodi's house. David testified, however, that occasionally the children "were being hidden in the house" and did not come out when he arrived. David testified to one occasion when he waited on Jodi's driveway for nearly 30 minutes to pick the children up. Finally, Jodi walked out of the house with Daniel and indicated that Daniel had soccer practice. David testified that, although he stated that it was his time for his visitation, Jodi nonetheless left with Daniel to go to soccer practice. David also testified that Erica regularly refused to attend weekend visitation because she was babysitting or had homework. Erica also told David that she would not spend time with him because he was not paying for any of her expenses or for a trip she wanted to take to Philadelphia. David testified that the children had not stayed overnight with him since the

weekend of Thanksgiving 2003 and that each visitation with the children lasted only three or four hours.

David testified to other occasions when scheduled visitation did not occur. David testified that Jodi refused David's request to reschedule a visitation that he missed as a result of a colonoscopy procedure. Jodi told David that she would not reschedule because the children "did not want to" go with him. David also testified that he was denied visitation with the children on his October 2, 2005, birthday. On this occasion, David went to pick up Daniel from Sunday school and was met by Jodi. Jodi revealed a subpoena she had received in regard to the instant proceedings. Jodi showed Daniel the subpoena and said, "ask your father why he's doing this." After this, Daniel told David that he would not be visiting him that day. David also testified that he had been denied visitation on Father's Day 2005.

David also testified that Daniel recently refused visitation with him because David would not pay for his summer camp and because David had sold the marital home. During David's testimony, David's attorney introduced a recorded telephone message left by Daniel on David's answering machine. In the message, Daniel stated:

"Hi, dad. It's 9:20, August 7th, p.m. Umm, just telling you now I'm not going with you tomorrow. Bye. I'm not going with you because I feel uncomfortable that you're selling the house and it really bothers me and you make me--and it makes me upset. Bye."

David testified that Jodi is uncooperative in making visitation arrangements and rarely returns his telephone calls. David testified that Jodi did not want to get involved in making arrangements for visitation and that he would have to attempt to make

arrangements by speaking to the children directly. David testified that Jodi is mean and sarcastic and that her demeanor is "quite poor" in front of the children. David testified that Jodi would often ask him for money when he came to pick up the children for visitation. On cross-examination, David acknowledged that he had canceled some of his Wednesday visitations because of business commitments. David also acknowledged that he sometimes canceled visitation one hour before it was to commence. David did not know the exact number of visits he had canceled, but testified that it was not a majority of the visits. David also testified that he had gone to most of Daniel's soccer games and a few practices. David testified that most of Daniel's soccer games take place on Sunday.

Joseph Poell testified that he was an attorney and had been appointed as the children's representative in this case. Poell testified that he recalled having a conversation with Jodi on August 30, 2004. Poell testified that, during this conversation, Jodi told him that she thought that David should not be involved in the children's lives at all. Poell also testified that he had met David on several occasions and that he did not know anything about David's character that would endanger the children in any way or that should preclude his exercise of visitation with the children.

At the close of evidence, the trial court denied David's petitions alleging visitation abuse and seeking a finding that Jodi was in indirect civil contempt. In making its ruling, the trial court noted that it had a very "heart wrenching" discussion with the children and that it found that the children were "terribly torn by the position that [the] adults have put them in." The trial court made the following additional findings:

"I will tell both parents that you're both at fault. You know, Mr. Charous, I was told, and I told you before, about the things that your son complained of why you weren't-

-if you went to practice, you had your nose in a newspaper reading all the time. You didn't care about going where he wanted to go. You wanted to do what you wanted to do, and I'll have to say Mr. Charous, somewhere along the line between your divorce and today's date, you dropped the ball. And that ball needs to be picked up in a way that no Court can ever enforce, and no Court can tell you how to do it because it's something between a parent and child relationship that's done outside the doors to this courtroom. Mrs. Charous, I don't believe that you're helping to foster the situation at all, and I place a lot of the blame at your feet, and I'm appalled by the recording that I heard in here today because what it tells me is that that pause is a pause by your son probably to look at you and say what am I supposed to say, mom, or, yeah, by the way, I'm uncomfortable with you because you're making me sell the house. That's not right. And those are not the words of a 10-9, 10 or 11 year old. And that's coming from you, and it doesn't take a brain surgeon to figure it out. *** [A]nd I'll say it on the record now, you're both bad parents. ***

Does it rise to the level of me being able to hold Mrs. Charous in contempt, no."

The trial court made no specific findings as to David's request for attorney fees and costs pursuant to the provisions of the parties' parenting agreement as well as section 508(b) of the Act.

The trial court subsequently denied David's motion to reconsider. The trial court's written order denying the motion provided, "The Court finds: that [David] failed to meet his burden by preponderance of the evidence that [Jodi] willfully violated the court's orders." The trial court's order further provided that, "[I]n the event that [David] appeals this Court's

decision, the transcript of the Court's <u>in camera</u> interview with the children shall be transcribed and sent to the appellate court with the record." This timely appeal followed.

David's first contention on appeal is that the trial court's denial of his petitions was against the manifest weight of the evidence. David argues that the trial court improperly placed upon him the burden of proving both that Jodi violated a court order <u>and</u> that her conduct in violating the order was willful and contumacious. David argues that he was required to prove only that Jodi violated an order of the trial court and the burden then shifted to Jodi to show that her conduct in doing so was not willful and contumacious. See <u>In re Marriage of Tatham</u>, 293 Ill. App. 3d 471, 480 (1997). David argues that he proved by a preponderance of the evidence that Jodi violated the provisions of the parenting agreement by not requiring the children to participate in visitation with David; by failing to cooperate with David to reschedule visitation when conflicts arose; by discussing with the children issues regarding the marital conflict and communicating "inappropriate, inaccurate, and derogatory information" about David to the children; by failing to require the children to attend psychological counseling; by scheduling the children's extracurricular activities without consulting David; and by interfering with David's ability to be informed as to the children's progress in school. David also argues that Jodi failed to present any evidence that her conduct in violating the provisions of the parenting agreement was not willful or contumacious. Accordingly, David contends that the trial court should have granted his petitions.

We first consider the trial court's denial of David's amended petition seeking a finding that Jodi was in indirect civil contempt. Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to

the opposing party.  Tatham, 293 Ill. App. 3d at 479.  Contempt that occurs outside of the presence of the trial court is classified as indirect contempt.  Tatham, 293 Ill. App. 3d at 480.  The existence of an order of the trial court and proof of willful disobedience of that order are essential to any finding of indirect civil contempt.  Tatham, 293 Ill. App. 3d at 480.  The burden initially falls on the petitioner to prove by a preponderance of the evidence that the alleged contemnor has violated a court order.  In re Marriage of LaTour, 241 Ill. App. 3d 500, 508 (1993).  The burden then shifts to the alleged contemnor to show that noncompliance with the court's order was not willful or contumacious and that he or she had a valid excuse for failure to follow the court order.  Tatham, 293 Ill. App. 3d at 480.  Contumacious conduct consists of "conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or lessening the authority and dignity of the court."  In re Marriage of Fuesting, 228 Ill. App. 3d 339, 349 (1992).  Whether a party is guilty of indirect civil contempt is a question for the trial court, and its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion.  In re Marriage of Logston, 103 Ill. 2d 266, 286-87 (1984).

Based upon our review of the record, we conclude that the trial court's denial of David's amended petition seeking a finding that Jodi was in indirect civil contempt was against the manifest weight of the evidence and reflected an abuse of discretion.  David satisfied his evidentiary burden by proving by a preponderance of the evidence that Jodi had committed numerous violations of the provisions of the parenting agreement.  Specifically, David proved that Jodi failed to comply with the visitation schedule, which provided that David was to have overnight visitation with the children on alternating weekends beginning on Friday at 5 p.m. and concluding on Sunday at 7:30 p.m.  In her

own testimony during the hearing, Jodi acknowledged that the children had not stayed overnight with David since Thanksgiving 2003. Jodi also did not dispute David's testimony that none of his weekend visits with the children after Thanksgiving 2003 lasted more than three or four hours. Additionally, Jodi acknowledged that, on certain alternating weekends, visitation did not occur at all because the children refused to visit David. Jodi acknowledged that the children also missed a weekend visitation with David when Jodi scheduled a surprise birthday party for Erica. Jodi admitted that she did not inform David about the birthday party and did not invite him to attend. Jodi also did not controvert David's testimony that he did not have visitation on his birthday or on Father's Day in 2005, despite the provisions of the parenting agreement indicating that he was entitled to visitation on these holidays.

David also proved that Jodi violated provisions of the parenting agreement that prohibited her from discussing with the children "issues of marital conflict." At the hearing, David offered several examples of instances where Daniel refused to visit him after Daniel had discussions with Jodi about certain monetary disputes and issues of marital conflict. For example, Daniel refused to visit David because David would not pay for his summer camp and because David had sold the marital residence pursuant to the provisions of the dissolution judgment. As detailed above, the trial court specifically found that Jodi was responsible for making Daniel leave a message on David's answering machine, stating that he would not visit David because he was "uncomfortable" that David was selling the house. David also introduced evidence that Daniel refused to visit him on David's birthday after Jodi showed Daniel a subpoena she had received in regard to the instant proceedings.

David also proved that Jodi had violated provisions of the parenting agreement requiring her to "cooperate in facilitating [David's] obtaining of the children's grades and progress at school," "authorize [David] to inspect the children's school and medical records and to communicate with teachers, school personnel, counselors and physicians to discuss the children's standing and progress," and "cooperate in advising the school to notify [David] of programs open to parents." During her testimony, Jodi acknowledged that, on December 8, 2004, she had written a letter to Erica's school with instructions to remove David from "any list as a contact person." Finally, David proved that Jodi refused to require the children to participate in psychological counseling with Dr. Burns despite the provision of the parenting agreement requiring the children to do so.

Once David proved by a preponderance of the evidence that Jodi had violated multiple provisions of the parenting agreement, the burden then shifted to Jodi to prove that her conduct was not willful or contumacious. In her appellate brief, as she did at trial, Jodi asserts that any violation of the parenting agreement committed by her was neither willful nor contumacious. Jodi initially argues that the evidence introduced at trial established that the children were unable to regularly visit with David primarily because of their busy extracurricular schedules. Relying on In re Marriage of LaTour, 241 Ill. App. 3d 500, 505 (1983), Jodi argues that she had the authority under the parenting agreement to select the children's extracurricular activities and that scheduled visitations should not preclude the children from engaging in those activities.

We reject Jodi's assertions that the children's participation in extracurricular activities excused her noncompliance with the visitation provisions of the parenting agreement. The record contains no evidence that the children's participation in extracurricular activities

precluded them from overnight visitation with David on those weekends assigned to him. While the children may have been engaged in daily activities during the weekend, we see no reason appearing in the record that David could not have been responsible for transporting the children to these activities as part of his visitation. Indeed, the evidence introduced at the hearing indicated that David had attended some of Daniel's soccer games and practices, and there was no evidence that he did not wish to do so. Contrary to Jodi's assertions in her appellate brief, the record contains no evidence that David ever rejected any suggestion by Jodi that he take the children to their extracurricular activities.

Additionally, we note that, while the parenting agreement ultimately gave Jodi the authority to decide what extracurricular activities the children would be involved in, it also required her to "consult with David before making any final decisions regarding after school activities for the children." The parenting agreement also provided that, "[s]ince David has been involved in some of these activities, and may need to be involved for transportation on his parenting time, it is important that he give input to Jodi regarding his availability to provide transportation to these activities *** when the children are residing with him." These provisions certainly indicate the parties' intent that David would be involved in the children's extracurricular activities and that their participation in extracurricular activities would not preclude him from exercising visitation. Indeed, the provisions acknowledge that David might have to transport the children to those activities that take place during his parenting time. The record contains no evidence that Jodi ever consulted with David about the children's extracurricular activities as required by the parenting agreement. Instead, the evidence revealed that Jodi unilaterally selected the extracurricular activities for the

children. During the hearing, Jodi offered no explanation that might justify her failure to consult with David about this issue.

Furthermore, we decline to apply the principles expressed in LaTour as a basis to conclude that the children's participation in extracurricular activities excused compliance with the visitation schedule. In LaTour, the reviewing court held that a trial court erred in denying a father's petition to modify a visitation order, which provided that the father could have visitation "at reasonable times and places." LaTour, 241 Ill. App. 3d at 502-03. The father lived in the suburbs of Chicago and the mother lived in Quincy, and to facilitate visitation the dissolution judgment provided that the mother "shall take the *** children to the Dixie Truck stop in [McLean] on weekends when requested by [the father] with sufficient advance notice to [the mother]." LaTour, 241 Ill. App. 3d at 502. The reviewing court held that the trial court should have granted the father's request for the establishment of a definite visitation schedule and remanded the case for the entry of a new visitation order. LaTour, 241 Ill. App. 3d at 505. In remanding the case, the reviewing court noted that the parties' children had busy extracurricular schedules and indicated that it would be reasonable for the trial court to "provide that children with extracurricular activities scheduled on [the father's] weekend for visitation need not attend that visitation." LaTour, 241 Ill. App. 3d at 505. The reviewing court explained that "busy and appropriate extracurricular schedules need not dictate visitation, but a visitation schedule also should not dictate or unduly restrict [the children's] activities." LaTour, 241 Ill. App. 3d at 505.

In LaTour, the parties lived a great distance apart, making it impracticable for the parties' children to participate in extracurricular activities and to visit their father during the same weekend. Unlike the parties in LaTour, the parties in the instant case do not live a

great distance apart. The testimony introduced at trial indicated that Jodi resided in Deerfield and David resided in Skokie. Given the relative proximity of the parties' residences, the children's participation in extracurricular activities did not preclude their visitation with David for the rest of the weekend. In the event that the children's extracurricular activities unduly interfered with Jodi's ability to comply with the court-ordered visitation schedule, then the appropriate action that Jodi should have taken was to seek modification of the trial court's visitation order rather than to ignore its provisions. See Gibson v. Barton, 118 Ill. App. 3d 576, 579-80 (1983) (affirming a trial court's modification of a weekend visitation schedule because of the children's activities). As Jodi has not requested a modification of the visitation schedule, we reject her assertions that the children's extracurricular activities justified her noncompliance with the visitation provisions of the parenting agreement.

Jodi also asserts that her failure to comply with the visitation schedule was the result of the children's refusal to visit David. The trial court was apparently swayed by this justification, as it directed this court to review the transcript of its in camera interview of the children. During this interview, as noted above, the children expressed their dislike of David and indicated their unwillingness to visit him. After reviewing the transcript of the in camera interview, as well as the other evidence introduced during the hearing, we reject the notion that the children's unwillingness to visit David excused Jodi's failure to comply with the visitation requirements. We conclude that the trial court's contrary conclusion was against the manifest weight of the evidence and constituted an abuse of discretion.

Illinois courts have held that a custodial parent may not disregard the visitation requirements of a dissolution judgment merely because his or her children do not desire to

visit the noncustodial parent. See In re Marriage of Marshall, 278 Ill. App. 3d 1071, 1082-83 (1996); Doggett v. Doggett, 51 Ill. App. 3d 868, 871-72 (1977). Where a dissolution judgment places the ultimate responsibility for compliance with the visitation provisions upon the custodial parent, the custodial parent cannot escape his or her duty to comply with the visitation provisions by "attempting to shift this burden to the discretion of [his or] her children." Doggett, 51 Ill. App. 3d at 872 (affirming trial court's contempt finding against parent who failed to comply with visitation provisions because the children did not want to visit noncustodial parent). A parent must comply with court-ordered visitation even where the child has expressed hostility toward the other parent. In re Marriage of Reed, 100 Ill. App. 3d 873, 877 (1981) (noting that visitation affords members of a family the opportunity to communicate with each other, and thus diminish hostilities and foster an atmosphere in which a renewal of affection may take place). In his treatise on Illinois family law, H. Joseph Gitlin states:

"In Illinois, the legislative public policy strongly suggests that the child should not have a voice in determining whether or not the child will obey a visitation order. The [Act] specifically states that the noncustodial parent will have reasonable visitation unless that right is forfeited because the child would be seriously endangered by such visitation. The public policy is also stated statutorily by declaring the presumption that maximum involvement of both parents with a child is in the child's best interests.

The standard in Illinois as to enforcement of visitation should be that visitation should be enforced, regardless of the child's preference, and that the means for such enforcement should be through contempt proceedings, with an opportunity to

purge by allowing visitation during a period of probation." H. Gitlin, Gitlin on Divorce §14--2(c), at 14-31 (3d ed. 2001).

In light of these authorities, Jodi cannot escape responsibility for her failure to comply with the visitation provisions of the parenting agreement by shifting the blame to the children. Although Erica and Daniel were not children of tender years, they were nonetheless minor children under the care, control, and custody of Jodi. The parenting agreement specifically imposed upon Jodi the obligation to have the "children prepared [for visitation] with the appropriate clothing and items the children will need to take with them" and to have the children "ready to leave promptly at the scheduled time." The evidence introduced at the hearing established that Jodi failed to consistently meet these obligations to facilitate the children's visitation with David. As noted above, Jodi had the children's suitcases packed and ready for weekend visitation only five or six times over a period of almost two years. Although the parties' children may have resisted visitation with David, Jodi offered no evidence to establish that visitation with David would compromise the children's safety or well-being. As noted above, the children's representative had no objection to the children's continued visitation with David and testified that he was aware of no evidence that would preclude David "from being an appropriate party to have visitation with his children." We also reject Jodi's attempts to justify her failure to require the children to attend psychological counseling by explaining that the children did not want to attend. Again, Jodi cannot attempt to shift to her children the blame for her failure to comply with her court-ordered obligations. See Doggett, 51 Ill. App. 3d at 872.

Additionally, Jodi does not even attempt to offer any explanation for her other violations of the parenting agreement. During her testimony at trial, Jodi did not attempt to

justify (1) her scheduling of a surprise birthday party for Erica on David's weekend for visitation without notifying or inviting David; (2) her decision to discuss in front of the children monetary and marital disputes between the parties; (3) her failure to require the children to attend visitation on David's birthday and Father's Day in 2005; (4) her decision to show Daniel a subpoena that she received in relation to the instant proceedings in an effort to interfere with David's visitation; and (5) her conduct in notifying Erica's school to have David removed as a contact. Because Jodi lacked a legally sufficient excuse for her numerous failures to comply with the trial court's order, we conclude that Jodi failed to prove that her conduct was not willful or contumacious.

In ruling on the contempt petition, the trial court found that David was a "bad parent" and noted that David could be more attentive to the children's interests. While the record does not necessarily contradict these findings, for the reasons detailed above we cannot accept the trial court's apparent conclusion that these circumstances justified Jodi's failure to comply with the provisions of the parenting agreement. Although perhaps David's parenting skills might have been a reason for the children's unwillingness to participate in visitation, they did not provide Jodi a lawful justification to violate numerous provisions of the parenting agreement. See Doggett, 51 Ill. App. 3d at 872. As already noted, the record contains no indication that the children's well-being was being jeopardized as a result of visitation with David, and the children's representative had no objection to continuing visitation pursuant to the terms of the parenting agreement. Accordingly, we conclude that the trial court should have granted David's petition to hold Jodi in indirect civil contempt of court. Therefore, we reverse the trial court's order denying his petition. We remand the

case to the trial court for the entry of a finding that Jodi is in indirect civil contempt of court and for further proceedings to determine appropriate sanctions and other relief.

We next consider the trial court's denial of David's petition alleging visitation abuse pursuant to section 607.1 of the Act. Section 607.1 provides a party an alternative remedy to seek enforcement of court-ordered visitation that is separate and apart from the trial court's contempt power. 750 ILCS 5/607.1 (West 2004). Section 607.1 provides that visitation abuse occurs when a party has willfully and without justification denied another party visitation as set forth by the court. 750 ILCS 5/607.1(a) (West 2004). A trial court's finding that a party committed visitation abuse will not be disturbed unless it is against the manifest weight of the evidence. In re Marriage of Aleshire, 273 Ill. App. 3d 81, 83 (1995). Upon a finding of visitation abuse, a trial court is authorized to (1) modify the visitation order; (2) order supervised visitation with a third party or public agency; (3) order makeup visitation; (4) order the parties to participate in counseling and mediation; and (5) order other appropriate relief deemed equitable. 750 ILCS 5/607.1(c) (West 2004).

In light of our earlier discussion, we conclude that David sustained his burden to prove that Jodi willfully and without justification denied David visitation as set forth by the parenting agreement. Accordingly, we hold that the trial court's decision to deny his petition alleging visitation abuse under section 607.1 of the Act was against the manifest weight of the evidence. We reverse the trial court's order denying his petition alleging visitation abuse and remand the case to the trial court for further proceedings to determine the proper grant of relief. In so ordering, we note that some of the relief sought in David's petition for visitation abuse overlaps with the relief requested in his amended petition seeking to hold Jodi in contempt. To avoid the entry of confusing and duplicitous orders on

remand, the trial court is directed to enter a single order fully detailing all of the relief awarded to David on both petitions.

David's second contention on appeal is that the trial court improperly denied his request for attorney fees and costs incurred in prosecuting his petitions. David contends that he is entitled to an award of costs and fees under the provisions of the parenting agreement, which specifically provides that, if "either party fails to comply with the terms of this Parenting Agreement, then the offending party will be ordered to pay all attorney's fees and costs incurred by the party seeking compliance with this Agreement." David also contends that he was entitled to an award of fees and costs under section 508(b) of the Act, which provides, "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2004). Because the evidence introduced at the hearing established that Jodi's failure to comply with the provisions of the parenting agreement was without compelling cause or justification, we conclude that David was entitled to an award of attorney fees and costs incurred in prosecuting his petitions and we reverse the trial court's order denying his request for fees and costs. See In re Marriage of Berto, 344 Ill. App. 3d 705, 717-19 (2003) (holding that a reviewing court may review record and independently determine that party violated trial court order without cause or justification so as to mandate the award of attorney fees under section 508(b), despite the trial court's failure to make such a finding). We remand the cause with instructions for the trial court to conduct a hearing to determine the amount of fees and costs incurred by David

in prosecuting his petitions to enforce the visitation provisions of the parenting agreement. After conducting the hearing, the trial court shall award David reasonable attorney fees and costs. See Berto, 344 Ill. App. 3d at 719.

For the foregoing reasons, we reverse the judgment of the circuit court of Lake County and we remand the case for further proceedings consistent with this order.

Reversed and remanded with instructions.

BOWMAN and BYRNE, JJ., concur.