**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250263-U

Order filed April 8, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| LINDA WOLAK, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-25-0263 |
| | ) | Circuit No. 12-D-1468 |
| and | ) | |
| | ) | |
| TOM DAWIDOWSKI, | ) | The Honorable |
| | ) | Raymond P. McSteen, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

**ORDER**

¶ 1    *Held*:    In a postdissolution of marriage case, respondent was not denied due process in the trial court proceedings to hold respondent in indirect civil contempt of court for failing to pay child support and violating other aspects of the court order. In addition, the trial court did not err in finding that respondent had failed to make the alleged payments, in holding respondent in indirect civil contempt and in requiring respondent to pay the additional attorney fees that petitioner had incurred because of the contempt proceedings. Affirmed.

¶ 2    Petitioner, Linda Wolak, filed an amended postdissolution petition to have her ex-

husband, respondent, Tom Dawidowski, held in indirect civil contempt of court for failing to pay

child support and other violations. Following an evidentiary hearing, the trial court (1) found that Tom had failed to pay the alleged amounts, (2) held Tom in indirect civil contempt, and (3) set an amount that Tom was required to pay to purge the contempt. After his motion to reconsider was denied, Tom was ordered to pay the attorney fees that Linda had incurred because of the contempt proceedings. Tom appeals. We affirm the trial court's judgment.

¶ 3                                     I. BACKGROUND

¶ 4        Tom and Linda were married in January 2004 and had two children: D.D., born in July 2005, and P.D., born in June 2007. In July 2012, Linda filed a petition for dissolution of marriage. In December 2013, the parties entered into a parenting agreement that gave Linda sole care, custody, and control of the children and gave Tom parenting time with the children on alternating weekends and rotating holidays. In May 2014, a judgment of dissolution was entered that incorporated the parties' parenting and marital settlement agreements. Among other things, the marital settlement agreement required Tom to pay child support and his share of the medical insurance premium to Linda in specified amounts on a monthly basis through the State Disbursement Unit.

¶ 5        In December 2021, following a hearing with all parties and counsel present, the trial court entered an order modifying the amounts that Tom was required to pay for child support and other expenses. The order provided that Tom would pay Linda $1,110 per month for child support and approximately $109 per month for his share of the medical insurance premium. Tom was also ordered to pay Linda $26,695 for retroactive child support by a date specified in January 2022.

¶ 6        In September 2022, Tom was found in indirect civil contempt of court for failing to pay the retroactive child support as provided in the December 2021 order. In March 2023, Tom was ordered, as a purge condition, to pay Linda $800 per month on the child support arrearage until

2

the remaining principal balance of approximately $19,186 was paid. Tom was also ordered to pay $1,110 per month as his current ongoing child support payment and approximately $87 per month for his share of the medical insurance premium. In addition, Tom was ordered to pay $300 per month to Linda until the approximately $8,126 that he owed Linda for her attorney fees was paid.

¶ 7        In November 2023, Tom filed a petition to modify his child support payment because the parties' older child, D.D., had reached majority and had become emancipated.

¶ 8        In March 2024, Linda filed a petition for adjudication of indirect civil contempt of court (contempt petition or petition) against Tom for failing to pay the amounts specified in the March 2023 order. In the petition, Linda set forth in great detail the relevant payment orders that had been entered (the payments that Tom was supposed to make for child support, the medical insurance premium, and Linda's attorney fees); the payments that Tom had actually made; and the amounts that Tom was in arrears. Linda alleged that Tom was approximately $4,786 in arrears in his child support and health insurance premium payments and $900 in arrears in his attorney fees payments. Linda also indicated in the petition that she was seeking to have the trial court order Tom to pay the additional attorney fees that she had incurred because of the contempt proceedings. Proper notice of the contempt petition was served on Tom's attorney.

¶ 9        In June 2024, Tom filed a response and opposed Linda's contempt petition. Among other things, Tom alleged in the response that he had made additional payments to Linda that were not listed in the petition.

¶ 10        In September 2024, the trial court held a hearing on Tom's petition to modify child support that had been filed in November 2023. At the conclusion of the hearing, the trial court took the matter under advisement. The following month, the trial court entered a written order

3

reducing Tom's current ongoing child support payment from $1,110 per month to $883 per month. The reduction was made effective as of November 2023, the date that Tom had filed the petition to modify. A form order for support was also entered that indicated, among other things, that Tom's net income per month at that time was $9,869.

¶ 11    In October 2024, Linda filed an amended petition for adjudication of indirect civil contempt (amended contempt petition or amended petition) against Tom for his failure to abide by the March 2023 and October 2024 orders. In the amended petition, Linda again set forth in great detail the relevant payment orders that had been entered (the payments that Tom was supposed to make for child support, the medical insurance premium, and Linda's attorney fees); the payments that Tom had actually made (listed in detail as to the attorney fees payments that Tom had made and more summarily as to the child support and medical insurance premium payments that Tom had made); and the amounts that Tom was in arrears. The amounts listed were modified, however, to update them to the current date, to incorporate the prior ruling that the trial court had made reducing Tom's child support payment, and to show the additional payments that Tom had made. Linda alleged in the amended petition that Tom was approximately $7,312 in arrears in his child support payments, approximately $249 in arrears in his health insurance premium payments, and $793 in arrears in his attorney fees payments. Linda also again indicated in the amended petition that she was seeking to have the trial court order Tom to pay the additional attorney fees that she had incurred because of the contempt proceedings. Proper notice of the amended petition was served on Tom's attorney. A rule to show cause was later issued against Tom by the trial court, and the amended petition was set for a hearing to be held in December 2024.

4

¶ 12    At about the same time that the rule to show cause was issued, Tom's attorney filed a motion to withdraw from representing Tom in this case. The motion was scheduled to be presented in the trial court at the end of October 2024. On the presentment date, Tom appeared in the trial court remotely, and his attorney's motion to withdraw was granted. In its written order, the trial court confirmed that the hearing date (December 2024) that was previously set on Linda's amended contempt petition would stand and ordered Tom to appear in court on that date. Shortly thereafter, a notice was filed in the trial court by Tom's attorney that had withdrawn, stating that he had served Tom by regular mail and email with a copy of the trial court's order.

¶ 13    On the December 2024 hearing date, Tom appeared in the trial court and was self-represented. Tom asked the trial court to grant him more time to prepare for the hearing, but the trial court denied that request. The hearing proceeded, and both Linda and Tom testified (some of Tom's testimony was informally taken by the trial court through questioning before Tom had been placed under oath).

¶ 14    Similar to the contents of her initial and amended petitions, Linda testified at the hearing about the payment orders that had been entered (the payments that Tom was supposed to make for child support, the medical insurance premium, and Linda's attorney fees); whether Tom had made those payments; and the amounts that Tom was in arrears. According to Linda, as of the hearing date, Tom was approximately $8,018 in arrears in his child support payments, approximately $371 in arrears in his medical insurance premium payments, and $193 in arrears in his attorney fees payments. In addition to her testimony, Linda presented two exhibits that showed in detail the payments that Tom was supposed to make for child support, the medical insurance premium, and Linda's attorney fees; the payments that Tom had actually made; and the amounts that Tom was in arrears. The exhibits were admitted into evidence by the trial court

5

with no objection from Tom. Tom chose not to cross-examine Linda about any of her testimony at the hearing.

¶ 15    Tom testified and, upon questioning from the trial court, confirmed that Linda's exhibits showed all of the payments that he had made. Tom stated to the trial court that he tried to pay what he could, but the trucking business (the business Tom was in) had been very slow lately. While being questioned by Linda's attorney, Tom indicated that he lived in Florida, that his rent and other expenses were approximately $3,900 per month, and that he was not behind in his monthly rent payments.

¶ 16    At the conclusion of the hearing, after all of the evidence had been presented and the parties had made their closing arguments, the trial court made its ruling. Prior to doing so, the trial court took judicial notice that the order that was entered in October 2024 (the form order for support) showed that Tom's net income was $9,869 per month. The trial court determined that Tom was approximately $8,582 in arrears in his child support, medical insurance premium, and attorney fees payments (the exact total amount of the individual arrearage amounts to which Linda had testified); found Tom in indirect civil contempt of court; and ordered Tom to pay an initial purge amount of $5,000 to Linda by the end of January 2025.

¶ 17    Tom filed a motion to reconsider, and Linda filed a formal petition for attorney fees to go along with her prior request for those fees. After a hearing, the trial court denied Tom's motion to reconsider; granted Linda's petition for attorney fees, which the trial court found were reasonable and necessary; and ordered Tom to pay the attorney fees that Linda had incurred because of the contempt proceedings. Tom filed a self-represented appeal.

¶ 19        On appeal, Tom argues that the trial court erred in finding him in indirect civil contempt of court for allegedly failing to make the payments at issue and in ordering him to pay the attorney fees that Linda had incurred in the contempt proceedings. Tom asserts that the trial court's ruling was erroneous for two reasons. First, Tom contends, the trial court made its ruling in violation of Tom's due process rights. More specifically, Tom asserts that he was deprived of proper notice in the contempt proceedings because Linda failed to serve him with the amended contempt petition and supporting exhibits after his attorney withdrew from the case. According to Tom, that "clear failure of notice" prevented him from mounting a meaningful defense and rendered the contempt hearing fundamentally unfair. Second, Tom contends, the trial court's finding of indirect civil contempt was based upon a manifestly erroneous child support arrearage amount that was derived from the unverified and contradictory figures contained in Linda's exhibits and that exceeded Linda's own arrearage calculation by over $200. For both of the reasons stated, Tom asks that we reverse the trial court's finding of contempt and that we vacate the award of attorney fees to Linda.

¶ 20        Linda argues that the trial court's finding of contempt and its award of attorney fees were proper and should be upheld. Linda asserts first that Tom was not denied due process in the contempt proceedings because he was properly served through his then attorney with notice of both the initial and amended contempt petitions, was present in court when his attorney was allowed to withdraw and the hearing date was confirmed, and was also present in court when the hearing actually took place. Second, Linda asserts that the trial court's determination of the total arrearage amount was not manifestly erroneous and was supported by Linda's exhibits, which were admitted into evidence at the hearing. Third and finally, as to her attorney fees, Linda

asserts that the trial court correctly awarded those fees after determining that they were reasonable and necessary and that they had been incurred because of Tom's failure to pay. For all of the reasons stated, Linda asks that we affirm the trial court's finding of contempt and its award of attorney fees.

¶ 21    All courts have the inherent power to punish individuals for contemptuous conduct. See *In re Marriage of Weddigen*, 2015 IL App (4th) 150044, ¶ 19. That power is essential to the maintenance and administration of the court's judicial authority. *Id.* Whether a party is guilty of contempt is a question of fact for the trial court to decide. *Id.* ¶ 22. A reviewing court will not disturb a trial court's determination in that regard unless it is against the manifest weight of the evidence or the record indicates an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984); *In re Marriage of Virgin*, 2021 IL App (3d) 190650, ¶ 58; *In re Marriage of Charous*, 368 Ill. App. 3d 99, 108 (2006). A decision is against the manifest weight of the evidence only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion or if the decision itself is unreasonable, arbitrary, or not based upon the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Similarly, an abuse of discretion occurs only if the trial court's ruling was arbitrary, fanciful, or unreasonable, or if no reasonable person would have taken the view adopted by the trial court. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 22    A contempt proceeding may be classified as being either criminal or civil in nature and also as being either direct or indirect. See *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990). In this particular case, Linda alleged that Tom had committed indirect civil contempt. Indirect civil contempt generally occurs when a party fails, outside the presence of the court, to do something that the court has ordered, resulting in the loss of a benefit or advantage to the

8

opposing party, with the dignity of the court being only incidentally involved. See *Virgin*, 2021 IL App (3d) 190650, ¶ 58; *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 479 (1997).

¶ 23      In an indirect civil contempt proceeding, the existence of a court order and proof of willful disobedience of that order are essential to any finding of indirect civil contempt. *Charous*, 368 Ill. App. 3d at 107. In such a proceeding, the burden falls initially upon the petitioner to prove by a preponderance of the evidence that the alleged contemnor has violated a court order. See *Virgin*, 2021 IL App (3d) 190650, ¶ 60; *Charous*, 368 Ill. App. 3d at 107. If the petitioner satisfies that burden, the burden then shifts to the alleged contemnor to show that noncompliance with the court's order was not willful or contumacious and that he or she had a valid excuse for failing to follow the court order. See *Virgin*, 2021 IL App (3d) 190650, ¶ 60; *Charous*, 368 Ill. App. 3d at 107-08.

¶ 24      The appropriate procedures to be used in a contempt proceeding vary, depending upon the type of contempt involved. See *Betts*, 200 Ill. App. 3d at 43. A person charged with indirect civil contempt, such as Tom in the instant case, is entitled only to minimal due process, which includes the right to notice and an opportunity to be heard. *Id.* at 52-53.

¶ 25      In the present case, after reviewing the record and the legal principles set forth above, we conclude that the trial court properly found Tom to be in indirect civil contempt of court. We reach that conclusion for two reasons. First, the record before us shows that Tom was not denied due process in the contempt proceedings. Rather, contrary to Tom's assertion, the record establishes that Tom was given adequate notice of the contempt hearing and an opportunity to prepare for the hearing. The record indicates that Linda served Tom's then attorney with notice and a copy of the initial contempt petition in March 2024, more than eight months before the contempt hearing was eventually held, and with notice and a copy of the amended contempt

petition in October 2024, more than seven weeks before the hearing was held. In addition, as noted above, Linda set forth in great detail in both the initial and amended petitions the relevant payment orders that had been entered; the payments that Tom was supposed to make for child support, the medical insurance premium, and Linda's attorney fees; the payments that Tom had actually made; and the amounts that Tom was in arrears. The initial and amended petitions also clearly noted that Linda was seeking to have the trial court order Tom to pay the additional attorney fees that Linda had incurred because of the contempt proceedings. Moreover, Tom was provided with notice of the motion to withdraw filed by his then attorney and with a copy of the order allowing the withdrawal and confirming the hearing date of the contempt petition. Tom was present in court (remotely) when that order was entered, was present in court again when the contempt hearing took place and actively participated in the contempt hearing. The record before us clearly shows, therefore, that Tom's right to minimal due process was not violated in this case. See *id.*

¶ 26   Tom's assertion to the contrary seems to be based upon his erroneous belief that Linda was required to re-serve him with notice and a copy of the amended petition after Tom's attorney withdrew from the case, even though Linda had already provided proper notice to Tom through his attorney while the attorney was still representing Tom. Tom has cited no law that supports that conclusion and we have found none. Indeed, it is well established that "notice to an attorney constitutes notice to the client and knowledge of an attorney is knowledge of, or imputed to the client, notwithstanding whether the attorney has actually communicated such knowledge to the client." *Segal v. Department of Insurance*, 404 Ill. App. 3d 998, 1002 (2010). Thus, the notices that were properly provided to Tom's then attorney of the initial and amended contempt petitions

10

were sufficient to provide proper notice of those petitions to Tom as well, and we reject Tom's argument to the contrary. See *id.*

¶ 27    Second, the record of the contempt hearing in this case establishes that the trial court's finding of contempt was well supported by the evidence. At the hearing, Linda testified about the payment orders that had been entered, the amounts that Tom was supposed to pay, whether Tom had paid those amounts, and the current amount of Tom's arrearages. Linda also presented two exhibits, which were admitted into evidence, that showed the same information but in much greater detail. Although Tom complains about those exhibits on appeal, his claim in that regard is waived because he told the trial court at the hearing that he had no objection to the exhibits being admitted and that he had no questions to ask Linda on cross-examination. See *Babikian v. Mruz*, 2011 IL App (1st) 102579, ¶ 13 (indicating that the failure to object to the admission of evidence at trial results in the forfeiture of that issue on appeal). The trial court subsequently set the total arrearage amount at the exact total of the individual arrearage amounts to which Linda had testified and that were shown in the exhibits. Based upon the evidence presented at the hearing, we conclude that the trial court's finding of indirect civil contempt was not against the manifest weight of the evidence and did not constitute an abuse of discretion.

¶ 28                                    III. CONCLUSION

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 30    Affirmed.