*In re* MARRIAGE OF JANE ELIZABETH TATHAM, n/k/a Jane Elizabeth Myre, Petitioner-Appellant, and JONATHAN EDWARD CHASE TATHAM, Respondent-Appellee.

Fifth District    No. 5—96—0494

Opinion filed December 29, 1997.

M. Keith Smith, of Mt. Vernon, for appellant.

Glenn R. Tetzlaff, of Marion, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Jane Elizabeth Tatham, now known as Jane Elizabeth Myre, appeals from orders of the circuit court of Johnson County finding her in contempt, imposing sanctions, and awarding attorney fees against her in favor of respondent, Jonathan Edward Chase Tatham. On appeal, petitioner contends that (1) under the Uniform Child Custody Jurisdiction Act (the Act) (750 ILCS 35/1 et seq. (West 1994)), the trial court lacked jurisdiction and the various orders finding her in contempt and imposing sanctions are void, (2) assuming, arguendo, that the trial court had jurisdiction, the trial court erred in finding petitioner's conduct wilful and contumacious, (3) the sanctions imposed on petitioner constitute an abuse of the trial court's discretion, and (4) the trial court erred in awarding attorney fees in the July 2, 1996, order. We affirm in part, vacate in part, and remand with directions.

I

The parties have been engaged in protracted custody, visitation, and support disputes stemming from their 1987 divorce. A brief review of the procedural history will suffice for purposes of this appeal. The parties were married on June 25, 1977. One child was born to the parties, Kathryn Elizabeth, born on April 15, 1981. On July 19, 1984, petitioner filed for dissolution. A judgment of dissolution was entered on July 21, 1987. The custody of Kathryn was awarded to petitioner, with respondent receiving certain visitation rights. Ultimately, respondent was ordered to pay $750 per month in child support, reduced by $175 per week during the period of respondent's summer visitation with his daughter. Respondent filed an appeal, which was soon followed by a cross-appeal by petitioner. On August 22, 1988, this court issued an opinion affirming in part and reversing in part the determination of the trial court. *In re Marriage of Tatham*, 173 Ill. App. 3d 1072, 527 N.E.2d 1351 (1988). The opinion left intact the trial court's rulings regarding child custody, visitation, and support. On September 18, 1990, the trial court entered an order modifying visitation, increasing respondent's visitation with Kathryn during the summer. Respondent was allowed visitation with Kathryn beginning on the eighth day of her summer vacation from school through the eighth day prior to her return to school.

On December 7, 1994, petitioner filed a motion for order to show cause, alleging that respondent failed to pay one-half month of child support ($375) and refused to pay $1,718.24 in medical expenses incurred on behalf of Kathryn. On January 12, 1995, respondent filed a petition to modify the judgment of dissolution concerning medical expenses for Kathryn. Respondent specifically asked that petitioner be required to obtain a comprehensive medical policy for Kathryn from the child support paid by respondent. On February 14, 1995, the trial court entered an order finding that respondent owed $352 in outstanding medical bills for Kathryn and ordered respondent to pay that amount and provide medical coverage for Kathryn. The trial court did not find respondent in wilful contempt for failure to pay medical bills. Thereafter, on March 29, 1995, respondent's child support obligation was reduced from $750 per month to $685 per month due to respondent providing health insurance for Kathryn.

On April 24, 1995, an amended order was entered which ordered respondent to immediately send an insurance card for Kathryn and file it with the clerk of the circuit court. The order also provided that respondent was required to pay support on or before the first business day of each month. The order specifically provided, "[A]ll matters contained in the Order of March 29, 1995, shall remain in full force and effect."

On June 14, 1995, respondent filed a petition for rule to show cause, alleging that petitioner had wilfully and contumaciously violated the visitation order of the trial court by refusing to allow Kathryn to visit respondent until and unless respondent paid child support for the month of June, in violation of the preexisting order finding no obligation on the part of respondent to pay child support for the months of June, July, and August. The trial court entered an order for rule to show cause and set a hearing for July 13, 1995. On July 5, 1995, petitioner filed a *pro se* special appearance, "without admitting to the personal or subject matter jurisdiction," in which she claimed that she never conditioned respondent's visitation with Kathryn on the payment of money. Incorporated in the special appearance was the affidavit of Ann Oldfather, a Louisville, Kentucky, attorney.

Oldfather asserted that she filed a verified petition on behalf of petitioner on April 6, 1995, in which it was asserted that Kentucky is the home state of Kathryn and petitioner and that it is in the best interests of Kathryn for Kentucky to have jurisdiction of all custody matters. Oldfather further explained that both petitioner and Kathryn had contact with respondent in June 1995 and attempted to work out visitation. A possible two-week visitation was arranged from June 19, 1995, through July 3, 1995. Petitioner asked respondent to pay the unpaid dental bills he owed because she would have no child support in June to take care of Kathryn. Oldfather denied that petitioner has ever said that respondent could not have visitation unless he paid the outstanding medical and/or dental bills. Oldfather also stated that she was contacted by another Louisville attorney, Mr. Haynes, who indicated that respondent was considering retaining him. In a later conversation with Haynes, Oldfather emphatically informed Haynes that visitation was not conditioned on respondent's compliance with his monetary obligations to petitioner. Oldfather further explained that she had various other conversations with Haynes concerning visitation, culminating in an agreement to talk via telephone the weekend of June 17, 1995, in order to finalize the June 19, 1995, visitation. Oldfather did not hear from Haynes over that weekend or even into the next week, so she sent him a letter, in which she asked whether respondent planned to exercise visitation. Oldfather sought to get an emergency hearing in Kentucky on the verified petition to modify visitation but was unable to procure a hearing date before June 30, 1995. Oldfather further asserted that she repeatedly asked Haynes to have respondent make arrangements for visitation and that it was not until petitioner was served with the motion to show cause regarding contempt that she

first heard that respondent was claiming that petitioner conditioned visitation upon payment. Again, Oldfather stated that this was never the case. Finally, Oldfather asserted that Illinois no longer had subject matter jurisdiction to make rulings on visitation and that under section 7 of the Act (750 ILCS 35/7 (West 1994)) a court is required to decline to exercise jurisdiction, even if it had it, if there is pending at the time the proceeding is commenced a custody determination in another state. Oldfather pointed out that on June 14, 1995, when respondent signed the affidavit for a motion to show cause, a custody proceeding was pending in Kentucky, precluding Illinois from exercising jurisdiction. The verified petition regarding visitation rights and an increase in child support filed by petitioner in Oldham, Kentucky, on April 6, 1995, was attached to the petition and alleged that Kentucky had been the home state of Kathryn since June 1991 and that it was in the best interest of Kathryn for a Kentucky court to assume jurisdiction. A June 14, 1995, letter from Oldfather to Haynes was also attached to this special appearance and response. The letter states, *inter alia*, "[I]t is my desire to facilitate, not hinder, visitation." A June 21, 1995, letter was also attached, in which Oldfather expressed her disbelief that Haynes failed to contact her. The final sentence asks whether respondent is even interested in having summer visitation.

On July 13, 1995, respondent appeared with counsel, but petitioner did not. The trial court noted for the record that it had received some documents from petitioner, but petitioner was nevertheless found in contempt. The trial court ordered respondent's attorney to prepare an order. On July 31, 1995, the trial court entered an order finding that when petitioner filed a petition in Kentucky on April 6, 1995, she sought relief related to matters still pending in Illinois, while Illinois had jurisdiction. The trial court further found that petitioner wilfully refused to obey the trial court's order concerning visitation between respondent and Kathryn beginning in June 1995 and that such actions constituted contempt. The trial court reserved a ruling on sanctions until August 22, 1995, when petitioner would be allowed to appear to purge herself of the contempt. The hearing on sanctions was ultimately held on October 3, 1995.

Petitioner's attorney at that time was Norma Minor, who referred the trial court to a June 30, 1995, Kentucky order which found that Kentucky had jurisdiction under the Act. The Kentucky court noted that even though there was an action pending before the circuit court of Johnson County, it did not prevent the Kentucky court from going forward on the April 16, 1996, verified petition because petitioner established that she and Kathryn had resided in Kentucky

since 1991. The Kentucky court scheduled visitation between respondent and Kathryn to begin either Friday, July 14, 1995, or Saturday, July 15, 1995, through Friday, August 11, 1995. At the October 3, 1995, hearing, Minor argued that it would be improper for petitioner to be held in contempt in Illinois when Kentucky had jurisdiction of the child visitation issues in question. Minor also asserted, *inter alia*, that petitioner did not appear at the July 13, 1995, hearing on the order for rule to show cause because she assumed the issue was moot following the entry of the June 30, 1995, Kentucky order scheduling visitation between Kathryn and respondent. Respondent's attorney made numerous admissions at the October 3, 1995, hearing, most notably that there was an agreement and a modification order signed on June 30, 1995, in Kentucky in which respondent was allowed visitation with Kathryn. Respondent's attorney also stated that respondent understands that "his daughter is a teenager and she is going to have other things outside and can't spend all the time with him." Ultimately, the trial court determined that petitioner wilfully and contumaciously violated its order with respect to visitation, and the court stated this finding in an order dated October 12, 1995. The trial court stated that it was "going to impose a sanction" of increased visitation for respondent with Kathryn for the 1995 Thanksgiving and Christmas holidays. During a discussion on making it petitioner's responsibility to transport Kathryn to respondent, Minor pointed out that petitioner was in poor health due to a recent stroke and that she might suffer from cerebral brain damage. Minor insisted that because of petitioner's poor health, it might be impossible for petitioner to comply with transporting Kathryn to respondent for increased visitation.

Petitioner and her attorney also noted that because of petitioner's stroke, petitioner had been unable to work full time for the previous 18 months. Accordingly, petitioner had no savings and no money with which to pay attorney fees. In the October 12, 1995, order, the trial court ordered petitioner to pay $1,500 in attorney fees at the rate of $100 per month. The trial court stated that in order for petitioner to "purge" herself of contempt, petitioner was required to comply with the visitation schedule and payment schedule.

On January 9, 1996, respondent filed a petition for rule to show cause, alleging that petitioner had not complied with the visitation scheduled for Christmas 1995 or with the attorney fees sanction. On January 10, 1996, the trial court entered an order for rule to show cause. On April 9, 1996, a hearing was held on respondent's petition for rule to show cause. Following the hearing, the trial court entered an order finding petitioner in "indirect civil contempt." The trial

court found that respondent had incurred additional attorney fees in the amount of $750 and ordered petitioner to pay that amount, along with the original $1,500, for a total of $2,250. The trial court then ordered:

> "3. As payment as and for attorney fees, child support is applied for the months of May, June, July and August and One Hundred Ninety[-]Four Dollars ($194.00) for the month of September. Mr. Tatham will not be required to make payments for those months. Child support shall begin in September with Mr. Tatham making a payment of Three Hundred Twenty Dollars ($320.00) for that month. Payments then to resume as before."

The trial court added that petitioner could purge herself of contempt by complying with the order.

On May 9, 1996, petitioner filed a motion to vacate, modify, or reconsider the contempt order. On May 31, 1996, respondent filed a response and petitioned for fees. On June 18, 1996, the trial court denied the petition to vacate, modify, or reconsider. On July 2, 1996, the trial court entered an order awarding attorney fees to respondent in the amount of $760. Petitioner now appeals from the April 10, 1996, order finding her in contempt and imposing sanctions and from the orders underlying such order, namely, the June 14, 1995, order for rule to show cause, the July 31, 1995, order finding her in contempt, and the January 10, 1996, order for rule to show cause, along with the June 18, 1996, order denying her motion to vacate, modify, or reconsider and the July 2, 1996, order awarding additional attorney fees.

## II

Petitioner first contends that under the Act the trial court lacked jurisdiction and that the various orders finding petitioner in contempt and imposing sanctions are void. We disagree.

■ Section 4 of the Act governs the jurisdiction of the court to make child custody determinations. It provides, in pertinent part:

> "(b) A court, once having obtained jurisdiction over a child, shall retain such jurisdiction unless it concedes jurisdiction to a foreign state or none of the parties to the action, including the child, remain in Illinois." 750 ILCS 35/4(b) (West 1994).

Petitioner allegedly moved with Kathryn to Kentucky in 1991. However, Illinois obviously had jurisdiction over this case when on December 7, 1994, petitioner filed a motion for order to show cause, alleging that respondent failed to pay one-half month of child support and refused to pay for Kathryn's medical expenses. Since December 1994, respondent has continued to reside in Illinois; thus, Illinois continues to retain jurisdiction over custody and support is-

sues. See 750 ILCS 35/4(b) (West 1994); *In re Marriage of Breyley*, 247 Ill. App. 3d 486, 493, 617 N.E.2d 423, 429 (1993).

■ Section 8 of the Act provides that a court can decline jurisdiction if it finds that it is an inconvenient forum:

"§ 8. Inconvenient Forum. (a) A court which has jurisdiction under this Act to make an initial or modification judgment may decline to exercise its jurisdiction any time before making a judgment if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

1. if another state is or recently was the child's home state;

2. if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

3. if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

4. if the parties have agreed on another forum which is no less appropriate; and

5. if the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in Section 2 of this Act."
750 ILCS 35/8 (West 1994).

The above principles cannot be applied in a rigid or mechanical fashion but require the trial court to exercise its discretion. The trial court's determination not to decline jurisdiction will be affirmed absent an abuse of discretion. *In re Marriage of Hilliard*, 178 Ill. App. 3d 620, 624-25, 533 N.E.2d 543, 546 (1989). Because petitioner agreed that Illinois was a proper forum as late as December 1994, we can find no abuse of discretion in the trial court's decision not to decline jurisdiction.

Petitioner next contends that the trial court erred in finding her conduct wilful and contumacious. First, petitioner asserts that the conduct upon which the October 1995 order imposing sanctions was based was neither wilful nor contumacious. We agree.

■ Civil contempt, unlike criminal contempt, consists generally of failing to do something ordered by a court, and the result is the loss of a benefit or advantage to the opposing party, with the dignity of the court being only incidentally involved. *People v. City of East St. Louis*, 206 Ill. App. 3d 626, 634, 564 N.E.2d 1372, 1377 (1990).

"It is civil contempt that is defined by the phrase that the contemnor 'has the keys to the cell in his own hands.' That means that the contempt finding should give the contemnor the ability to purge at any time." *In re Marriage of Morse*, 240 Ill. App. 3d 296, 302, 607 N.E.2d 632, 637 (1993).

Contempt which occurs outside the presence of the court is classified as indirect contempt. *City of East St. Louis*, 206 Ill. App. 3d at 636, 564 N.E.2d at 1378. The existence of an order of the court and proof of wilful disobedience of that order are essential to any finding of indirect contempt. *People v. Wilcox*, 5 Ill. 2d 222, 125 N.E.2d 453 (1955). The burden rests upon the alleged contemnor to show that noncompliance was not wilful and contumacious and that he or she has a valid excuse for failure to follow the court order. See *People v. Stanley*, 60 Ill. App. 3d 909, 911, 376 N.E.2d 1095, 1097 (1978). Merely because a party has not complied with a divorce decree or a court order is not a sufficient basis for holding that party in indirect contempt of court. *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 631, 579 N.E.2d 432, 441 (1991). Whether a party is guilty of contempt is a question of fact for the trial court, and its decision will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87, 469 N.E.2d 167, 176 (1984).

■ In the instant case, the evidence supports petitioner's assertions that she did not wilfully or contumaciously disobey the trial court's orders concerning visitation. First, petitioner denied making child support payments a precondition for visitation with Kathryn. More importantly, petitioner's attorney, Ann Oldfather, emphatically asserted in an affidavit that visitation was not conditioned on respondent's compliance with his monetary obligations. The evidence adduced at the hearing and through Oldfather's affidavit supports these assertions. Oldfather explained in detail how she attempted to set up summer visitation between Kathryn and her father. Second, the record indicates that separate proceedings were being conducted in Kentucky concerning visitation. A copy of a June 30, 1995, Kentucky order was introduced, with scheduled visitation between Kathryn and respondent to begin either July 14 or 15, 1995, and to end August 11, 1995. Third, the record reveals that Kathryn was becoming an independent teenager who wanted to remain in Kentucky with her friends rather than spend extended periods of her school vacation with respondent in Illinois. Respondent's attorney summarized it best when he said that respondent recognized that his daughter is a teenager and she has other things going on now. Under these circumstances, and after reviewing the record as a whole, we find

that the July 31, 1995, order holding petitioner in contempt is against the manifest weight of the evidence and an abuse of the trial court's discretion.

■ Petitioner further contends that the conduct upon which the April 10, 1996, order imposing sanctions was based was neither contumacious nor wilful. After a complete review of the record, however, we cannot agree.

On January 9, 1996, respondent filed a petition for rule to show cause, alleging that petitioner had not complied with the Christmas 1995 visitation schedule and had not paid attorney fees as set forth in the October 1995 order. On January 10, 1996, the trial court entered an order for rule to show cause, and a hearing was held on April 9, 1996, to determine whether petitioner was in contempt. Petitioner appeared *pro se* at the hearing and testified that it was difficult for her to organize and understand dates because of her recent medical problems. As to Christmas visitation, petitioner testified that she was scheduled to deliver a horse to Nashville, Tennessee, and that conflicted with her being able to get Kathryn back to Illinois. Moreover, according to petitioner, Kathryn had other plans for the holidays, which conflicted with the extended visitation previously ordered by the trial court. Kathryn's testimony was similar in this regard. As for the payment of the $100 per month previously ordered by the trial court to pay for respondent's attorney fees, petitioner testified that she simply did not have the money to make the payments. Petitioner's sister also testified that petitioner did not have the money to make the payments. However, both petitioner and her sister testified that petitioner's family had set up a trust to assist petitioner in paying her medical bills, rent, and health insurance premiums. In addition, petitioner had received income from her job as a horse trainer, as well as child support payments. Petitioner testified that she earned over $29,000 in 1995 and had earned $4,000 during the months of January and February 1996.

The law is well settled that one must comply with a court order unless such order is utterly void, and it is no defense in a contempt proceeding to show that the order is merely erroneous. *Faris v. Faris*, 35 Ill. 2d 305, 309, 220 N.E.2d 210, 212 (1966); *Cummings-Landau Laundry Machinery Co. v. Koplin*, 386 Ill. 368, 54 N.E.2d 462 (1944); see also *In re Marriage of Houston*, 150 Ill. App. 3d 608, 615, 501 N.E.2d 1015, 1020 (1986); *Stern v. Stern*, 40 Ill. App. 2d 374, 380-81, 188 N.E.2d 97, 100 (1963). To hold otherwise would encourage parties to disregard a trial court's order if they believe rightly or wrongly that the underlying order would be overturned on appeal. Such an interpretation would severely impede a trial court's power and ef-

fectiveness. Accordingly, even though we do not agree with the trial court's initial finding of contempt, petitioner was required to follow the dictates of the trial court until such time as the trial court's order was set aside by either the issuing court or the reviewing court.

■ Because we believe that the initial finding of contempt was in error, petitioner is not responsible for the payment of respondent's attorney fees in the amount of $1,500. See 750 ILCS 5/508(b) (West 1996); *Sullivan v. Sullivan*, 16 Ill. App. 3d 549, 552, 306 N.E.2d 604, 606 (1973). However, we believe that petitioner is responsible for the $750 award of attorney fees entered on April 10, 1996. It is generally accepted in both civil and criminal contempt that an appropriate remedy may be to require the contemnor to bear the reasonable costs of the contempt proceedings, including the assessment of attorney fees. *Frank B. Hall & Co. v. Payseur*, 99 Ill. App. 3d 857, 862, 425 N.E.2d 1002, 1006 (1981). While there is no contempt for the failure of a person to obey such an order due to poverty, insolvency, or other misfortune (*In re Marriage of Lavelle*, 206 Ill. App. 3d 607, 613, 565 N.E.2d 291, 295 (1990)), we cannot agree with petitioner that she faced such a dire situation. Moreover, while it is true that an alleged contemnor cannot be held in contempt when he or she is unable to comply through no fault of his or her own (*County of Cook v. Lloyd A. Fry Roofing Co.*, 59 Ill. 2d 131, 137, 319 N.E.2d 472, 476 (1974)), the record here does not support petitioner's assertions that she is unable to comply with the trial court's order. Instead, the record reflects that petitioner could have delivered Kathryn to respondent on time in order to comply with the trial court's previous visitation schedule. It is apparent from the record that the trial court did not believe petitioner's testimony nor that of Kathryn or petitioner's sister concerning petitioner's inability to comply with the trial court's order. When an evaluation of credibility or the weight of the evidence was made by the circuit court, a court of review cannot substitute its judgment for that of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as to require a different conclusion. *Sunset Travel, Inc. v. Lovecchio*, 113 Ill. App. 3d 669, 678, 447 N.E.2d 891, 897-98 (1983).

However, we believe that the award of $750 and the requirement that respondent's child support payments be applied to reduce the amount of attorney fees owed by petitioner to respondent is incorrect. Respondent was not seeking a reduction in child support but rather a petition to show cause why petitioner should not be held in contempt for the failure to comply with visitation orders. It is well settled that a violation of visitation terms by a mother does not excuse the father from his support obligations. *Cooper v. Cooper*, 59

Ill. App. 3d 457, 463, 375 N.E.2d 925, 931 (1978); *Slavis v. Slavis*, 12 Ill. App. 3d 467, 472, 299 N.E.2d 413, 417 (1973). Accordingly, we believe that the order allowing respondent to abate child support payments was in error. Petitioner is required to pay the reasonable attorney fees of $750. Like the $750 award of attorney fees entered on April 10, 1996, we find the award of $760 made on July 2, 1996, reasonable under the circumstances.

A review of the record indicates that the trial court has clearly had enough of both of these parties, petitioner in particular, and for good reason. We agree with petitioner, however, that the initial finding of contempt was in error and that respondent's child support payments cannot be applied to reduce the amount of attorney fees owed by petitioner to respondent.

For the foregoing reasons, the order of the circuit court of Johnson County of April 10, 1996, is affirmed in part and vacated in part, and this cause is remanded with directions to set up a payment schedule for the $1,510 ($750 and $760) in attorney fees owed by petitioner to respondent. The orders of June 14, 1995, July 31, 1995, and October 12, 1995, are vacated. The orders of January 10, 1996, June 18, 1996, and July 2, 1996, are affirmed.

Affirmed in part and vacated in part; cause remanded with directions.

CHAPMAN and MAAG, JJ., concur.