NOTICE
Decision filed 05/05/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241237-U

NO. 5-24-1237

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| TAMI A. MICHL, | ) | Jasper County. |
| | ) | |
|     Petitioner-Appellant and Cross-Appellee, | ) | |
| | ) | |
| and | ) | No. 21-D-2 |
| | ) | |
| RYAN L. MICHL, | ) | Honorable |
| | ) | Kevin S. Parker, |
|     Respondent-Appellee and Cross-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order denying Tami's petition for indirect civil contempt and Ryan's motion to strike, request for Rule 137 sanctions, and request for attorney fees, because the court's findings were not against the manifest weight of the evidence nor was its decision an abuse of discretion.

¶ 2    Petitioner, Tami A. Michl, appeals the November 14, 2024, order of the circuit court of Jasper County denying her petition for indirect civil contempt against respondent, Ryan L. Michl. On appeal, Tami argues the court erred by failing to issue a rule to show cause against Ryan for failing to abide by the terms of the parties' marital settlement agreement and prior agreed orders. Ryan cross-appeals, arguing that the court (1) committed reversible error by "implicitly" denying his motion to strike, (2) abused its discretion by denying his request for sanctions, and (3) abused

1

its discretion by denying his request for reimbursement of attorney fees. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties. Because the parties share a last name, we will refer to them by their first names throughout this decision.

¶ 5      Ryan and Tami married on May 8, 1999, in Newton, Illinois. Four children were born to the parties during the marriage. On January 11, 2021, Tami filed a petition for dissolution of marriage.

¶ 6      On April 6, 2023, the parties entered into a marital settlement agreement (MSA). On April 13, 2023, an agreed judgment of dissolution was entered which approved and adopted the MSA. The MSA stated that Ryan would pay the sum of $1,600,000 to Tami as an "equalizing payment." Payments were to be made in three installments, $500,000 paid by July 4, 2023, $500,000 paid by April 4, 2024, and $600,000 paid by April 4, 2025.

¶ 7      Also relevant to this appeal, the MSA provided that Ryan was "exclusively responsible for payment of any indebtedness associated with" the vehicles that the parties' two daughters drove. The MSA stated Ryan "shall maintain liability insurance on the vehicle[s]" until each daughter "completes her undergraduate degree, graduates with a two-year associates degree and does not seek an undergraduate degree, or attains the age of 24, whichever occurs first." The MSA further stated that "[e]ach party shall be individually responsible for any debt they have incurred in their name solely since the date of filing of the Petition [for dissolution of marriage] in this cause, and

2

each shall respectively hold the other party harmless for any liability associated therewith." That section continued:

> "Notwithstanding any of the foregoing, Wife agrees that within seven (7) business days of receiving her first $500,000.00 equalization payment *** she shall pay off the balance, in full, for the Illinois Wildlife Sam's Club Capitol One credit card and shall not accrue any more charges on said card. After the balance of the card has been paid in full by Wife, at her sole expense, the card shall become the sole asset of Husband, as it is currently held in his name and he shall have the right to close said credit card account if he so chooses."

¶ 8    The MSA stated that "Husband and Wife agree that they shall equally split all medical, doctor, dental, orthodontia, ophthalmological, prescription, counseling, and all other healthcare related expenses for such children that are not covered or reimbursed by an applicable policy of health insurance of any applicable government assistance program."

¶ 9    The MSA further stated that "[e]ach Party shall bear their own respective attorney fees and costs incurred by them in the perfection of this Agreement, and in this dissolution of marriage proceeding, and each shall indemnify and hold the other Party harmless from any claims associated therewith."

¶ 10   Section 14 of the MSA stated:

> "Husband shall pay for the tuition, book fees, and required school expenses for each of the four children from this marriage, so the children can obtain an undergraduate or associates degree. Husband's obligation to pay for tuition and expenses shall be capped at the current tuition and fee rate for in-state tuition at the University of Illinois Urbana-Champaign. Husband shall not be responsible for payment of the children's housing and other costs while attending a post-secondary education institution."

¶ 11   Section 17 of the MSA contained a "Global Settlement Agreement" clause which stated:

> "The Parties agree that this Agreement is intended to be a global settlement agreement that resolves any and all disputes they have already alleged, or might be capable of alleging against one another regarding the Husband's farming operation with Third Party Respondents, the operation of the hunting lodge, the operation of the cattle barn and raising of livestock, along with any and all other known and unknown causes of action between the Parties."

3

¶ 12    The MSA also contained a "Mutual Release" provision which stated that the parties released and discharged each other from "any and all actual or potential liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind." The MSA also contained a "Complete Agreement" provision which stated that it was the "full and final resolution of all issues pending between the Parties, and that its provisions are non-modifiable" except by written agreement or court order.

¶ 13    On May 3, 2023, Tami filed a petition for finding of indirect civil contempt. In her petition, she alleged that pursuant to the MSA, Ryan was responsible for paying all marital debt except for the Sam's Club credit card. She alleged Ryan failed to pay marital debt as required by the MSA. Specifically, her petition alleged that Ryan "failed and refused to pay the marital debts including, but not limited to outstanding medical bills, orthodontia bills and others and the creditors are seeking payment from or charging to the Sam's card." On the same day, Tami filed a motion to compel. She alleged that she requested copies of the statements from the Sam's credit card. Tami's motion to compel argued that without the statements, she could not identify the balance of the Sam's card as of the date of the dissolution.

¶ 14    On May 18, 2023, Ryan filed his response to Tami's petition for finding of indirect civil contempt. Ryan stated that he paid all bills that he was made aware of, and he claimed to be unaware of any outstanding bills owed. Further, he argued that Tami's petition should be dismissed due to lack of sufficient facts, because it failed to include any specific bills which allowed him the opportunity to pay. In response to her motion to compel, Ryan argued that he previously complied with a court order requiring him to provide "all log in information for [the Sam's Club credit card]." He stated that Tami had access to the Sam's Club credit card account and "had full ability to obtain the statements herself."

4

¶ 15    On October 4, 2023, Tami filed an amended petition for finding of indirect civil contempt. In her amended petition, Tami stated that the MSA required Ryan "to pay college expenses up to the cost of in-state annual costs at the University of Illinois." Tami alleged that Ryan failed and refused to pay his daughter's college expenses. Tami also attached various statements and expenses to her amended petition.

¶ 16    In response to Tami's amended petition, Ryan filed a motion to strike. Ryan argued that the MSA specifically provided that "Husband shall pay for the tuition, book fees, and required school expenses" for the parties' children. He further argued that the MSA stated that "Husband shall not be responsible for payment of the children's housing and other costs while attending a post-secondary education institution." Ryan further stated that the MSA provided that "[e]ach party shall be individually responsible for any debt they have incurred in their name solely since the date of filing of the Petition in this cause." He argued, pursuant to the MSA, that the parties were equally responsible for payment of all uncovered "medical, doctor, orthodontia, ophthalmological, prescription, counseling, and other healthcare related expenses" for the children. In his response, Ryan argued Tami's petition was misleading and "blatantly misrepresent[ed]" the MSA. He requested sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and sought reimbursement of the attorney fees incurred.

¶ 17    On March 6, 2024, Ryan filed a motion for finding of indirect civil contempt. Ryan's motion stated that the MSA provided that he receive certain real estate and required that "Wife shall cooperate with Husband's efforts to refinance the indebtedness" and shall execute any document to complete the refinance "within three business days." Ryan's motion stated that Tami sent correspondence to Ryan which stated that she would not deliver the deeds until she obtained "some security interest in the property." Ryan argued that this was in breach of the MSA.

¶ 18    On March 28, 2024, the circuit court held a hearing on Ryan's motion for finding of indirect civil contempt. Ryan argued that his refinance of the properties was contingent on Tami delivering the executed deeds. He sought a rule to show cause order. Tami argued that she was entitled to inspect the refinance documents. The court issued a rule to show cause order on April 19, 2024. In its order, the court ordered Tami to appear on April 24, 2024, and show cause why she should not be held in contempt for failure to deliver the executed deeds. Tami delivered the deeds shortly after the issuance of the rule to show cause.

¶ 19    On May 7, 2024, Tami filed a petition for finding of indirect civil contempt. In her petition, she alleged that despite delivering the executed deeds, Ryan failed to make his second equalizing payment of $500,000. Tami's petition requested an order finding Ryan in contempt for failure to make said payment. Tami also issued a citation to discover assets to Ryan's bank. On June 14, 2024, the parties entered an agreed order lifting the citation which allowed Ryan to complete the refinance.

¶ 20    On June 25, 2024, the circuit court held a hearing on the parties' unresolved petitions for indirect civil contempt. The court took the matter under advisement and requested that each party submit written final arguments.

¶ 21    On October 18, 2024, Tami submitted her written "Final Argument" to the circuit court. Tami argued that Ryan was in contempt (1) "for his failure to pay the $2,000.00 representing summer tuition for a class which the parties' daughter needed to graduate"; (2) for failure to pay the accountant's bill; (3) for failure to pay unpaid medical bills for the children; and (4) for failure to pay for insurance and repairs of their daughter's vehicle.

¶ 22    Also on October 18, 2024, Ryan submitted his "Written Closing Argument for June 25, 2024, Contempt Hearing." Ryan argued that he complied with the terms of the MSA where

6

possible, and any failure to comply with the terms of the agreement was caused by Tami's actions. Specifically, he argued that the college rent expenses were not his responsibility under the MSA, that Tami unambiguously agreed to pay the credit card charges at issue, that the car repair bill was not his responsibility, and that Tami was not entitled to reimbursement for the accountant's bill or other charges. Ryan asked the court to find that Tami filed "vexatious pleadings to harass [him], needlessly delay[ed] the proceedings, and increase[ed] the cost of litigation and [his] cost of completing his obligations under the MSA." Finally, Ryan sought attorney fees for defending the petitions for contempt.

¶ 23     On November 14, 2024, the circuit court entered the following docket entry:

> "THIS MATTER came on for hearing on June 25, 2024, on the Counter Petitions for Finding of Indirect Civil Contempt. *** Following the hearing on these matters, the Court took the matters under advisement. Having now considered fully, the record before it, including this Court's prior orders, the Report of Proceedings of June 25, 2024, the written arguments of counsel and being mindful of the Court's inherent authority to enforce its orders through the powers of contempt and now being fully apprised in the premises, FINDS and RULES as follows. This is the second order in response to endless petitions filed by both parties seeking findings of indirect civil contempt against the other. Considering the voluminous record before it, the Court notes that both parties have played loosely with their own interpretation as to what the Court's prior orders, many of which were entered by agreement, required of them by the letter or spirit and neither has been more violative than the other. ACCORDINGLY, the Court DENIES each of the counter petitions for findings of indirect civil contempt. Each shall pay their own respective attorney fees and costs. The Clerk is directed to provide a copy of this docket entry ruling to counsel of record."

¶ 24     On November 18, 2024, Tami filed her timely notice of appeal. On November 21, 2024, Ryan filed his timely notice of cross-appeal.

¶ 25                                             II. ANALYSIS

¶ 26     On appeal, Tami argues that the circuit court erred by denying her petition for finding of indirect civil contempt against Ryan. Specifically, Tami argues that she met her burden of proving that Ryan violated the MSA in that he failed to pay summer tuition for the parties' child. Tami also

7

argues that she met her burden of proving Ryan failed to pay an accountant bill incurred during the course of the marriage, as required under the MSA. Lastly, Tami argues she met her burden of proving Ryan failed to pay medical bills as required under the MSA. On cross-appeal, Ryan argues that the circuit court erred by denying his January 8, 2024, motion to strike, his request for Rule 137 sanctions, and his request for attorney fees. In support, Ryan argues that Tami's pleadings were "frivolous and vexatious," and her testimony proved she knew she filed petitions that asked the court to punish Ryan for failure to pay bills that he had no obligation to pay. For the reasons that follow, we affirm.

¶ 27                                  A. Tami's Appeal

¶ 28    Tami argues that the circuit court erred by denying her petition for finding of indirect civil contempt against Ryan where he allegedly failed to pay tuition, the accountant's bill, and medical bills. We consider each allegation in turn.

¶ 29    Indirect contempt occurs outside the presence of the trial court. *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 480 (1997). Proof of willful disobedience of a court order is essential to any finding of indirect civil contempt. *Id.* Once the moving party establishes by a preponderance of the evidence that a violation occurred, "the alleged contemnor has the burden of showing that the violation was not willful and contumacious and that he or she had a valid excuse for failing to follow the order." *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17 (citing *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006)). Contumacious behavior consists of "conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or [conduct] lessening the authority and dignity of the court." (Internal quotation marks omitted.) *Charous*, 368 Ill. App. 3d at 108. Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is

8

against the manifest weight of the evidence or the record reflects an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984). An abuse of discretion occurs only if the trial court's decision is arbitrary or "exceeds the bounds of reason and ignores recognized principles of law." *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39, 64 (2008).

¶ 30                              1. *Summer Tuition*

¶ 31    First, Tami argues that the circuit court's order was against the manifest weight of the evidence because "the record shows that as the Petitioner, Tami, met her burden by proving that Ryan had violated prior court orders." Tami alleges that she paid the summer 2023 tuition bill for the parties' daughter and was not reimbursed by Ryan. Tami argues that it is undisputed that the MSA provided that Ryan was responsible for the "tuition, book fees, and required school expenses for each of the four children." Ryan responds, arguing that Tami failed to meet her burden in proving that he failed to pay a tuition bill. We agree with Ryan.

¶ 32    To prevail on her petition for indirect civil contempt, Tami was required to prove Ryan's willful disobedience of a court order. See *In re Marriage of Tatham*, 293 Ill. App. 3d at 480. As noted above, we will not disturb the circuit court's determination on contempt unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d at 286-87. At the June 25, 2024, hearing on the parties' petitions for contempt, Tami testified that she paid a $2,000 tuition bill, and that Ryan never reimbursed her. The circuit court admitted a receipt from Eastern Illinois University (EIU) as an exhibit. The court also admitted a check dated August 16, 2023, paid to the order of EIU for "Graci College." Ryan argues that neither the check nor the receipt showed "exactly what Tami was paying for at EIU." Further, at the June 25, 2024, hearing Ryan testified that he never received documentation showing the

payment was for tuition, despite asking Tami for such. Based upon our review of the record, it was not clear that the $2,000 payment was a tuition payment.

¶ 33     The court had a reasonable basis to conclude that Ryan did not violate the MSA with regard to the tuition payments. As the trier of fact, the circuit court was responsible for resolving any factual disputes, judging the credibility of the witnesses, determining the weight to afford their testimony, and deciphering contradicting evidence. See *Joel R. v. Board of Education of Mannheim School District 83*, 292 Ill. App. 3d 607, 613 (1997). Ultimately, a court's "findings of fact are 'not against the manifest weight of the evidence merely because the record might support a contrary decision' " (*Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 373 (2004) (quoting *Graham v. Mimms*, 111 Ill. App. 3d 751, 767 (1982))), and we are not to overturn these simply because we may disagree with them (see *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 452 (2009)).

¶ 34     In light of the record on appeal and pursuant to this deferential standard, we cannot say that the trial court's determination to deny Tami's petition for contempt was against the manifest weight of evidence, nor was it an abuse of discretion.

¶ 35                                 2. *Accountant Bill*

¶ 36     Next, Tami argues that the circuit court's order denying her petition for rule to show cause was against the manifest weight of the evidence, because the MSA stated that Ryan was responsible for all marital debts not otherwise expressly stated. Tami argues that she testified that there was an unpaid accountant bill incurred during the course of the marriage that was marital debt, and therefore Ryan's responsibility. In response, Ryan points to the language of the MSA which stated that "[e]ach party shall be individually responsible for any debt they have incurred in their name solely since the date of filing of the Petition in this cause, and each shall respectively

10

hold the other party harmless for any liability associated therewith." Ryan also relies on the global settlement language of the MSA, which resolved any known or unknown disputes amongst the parties.

¶ 37 Our review of the record demonstrates that the accountant's bill was directed to Tami. The bill contained her name and address and reflected invoice dates of November 9, 2021, and April 28, 2022. Additionally, Tami testified that the bill was for preparation of her 2021 and 2022 individual income tax return. Ryan correctly argues that the MSA provides "[e]ach party shall be individually responsible for any debt they have incurred in their name solely since the date of filing of the Petition in this cause, and each shall respectively hold the other party harmless for any liability associated therewith." The petition for dissolution of marriage was filed January 11, 2021. Based on the evidence presented, we cannot say that the circuit court's denial of Tami's petition for contempt was against the manifest weight of the evidence, nor was it an abuse of discretion.

¶ 38                                     3. *Medical Bills*

¶ 39 Lastly, Tami argues that the circuit court's order denying her petition for rule to show cause was against the manifest weight of the evidence, because she established that there were unpaid medical bills that were Ryan's responsibility under the terms of the MSA. Tami argues that the MSA states that the parties shall equally split any noncovered medical expenses. Specifically, Tami alleges that the evidence presented at the June 25, 2024, hearing reflected that she paid her half of medical bills for medical care for the parties' daughters, but that Ryan had not paid his half of the bills. Tami alleged that the bills were incurred prior to the judgment of dissolution, and as such they are considered marital debt that Ryan is solely responsible for pursuant to the MSA. In response, Ryan argues that he testified that he paid all the bills he was aware of. Ryan argues the

11

circuit court had a reasonable basis to believe that all medical bills had been paid, and the court did not err in denying Tami's petition for contempt. We agree with Ryan.

¶ 40    At the June 25, 2024, hearing, Tami testified to the existence of "doctor bills" and stated she paid her half, but Ryan did not pay his half as required under the MSA. Tami stated the bills "went to collections." At the time of testimony, however, Tami stated she no longer received the collection notices. Ryan testified that he paid "all the bills he was aware of."

¶ 41    Based on the evidence presented, we cannot say that the circuit court's denial of Tami's petition for contempt was against the manifest weight of the evidence, nor was it an abuse of discretion. The court had a reasonable basis to conclude that Ryan complied with the MSA to the extent he received proper notice and that any remaining discrepancies did not rise to the level of willful, contumacious noncompliance. Accordingly, the court's denial of Tami's petition for indirect civil contempt on all three grounds was not against the manifest weight of the evidence and did not constitute an abuse of discretion.

¶ 42                                B. Ryan's Cross-Appeal

¶ 43    On cross-appeal, Ryan argues the circuit court erred by (1) denying his motion to strike, (2) failing to issue Rule 137 sanctions against Tami, and (3) failing to award him attorney fees pursuant to the rule to show cause the court previously issued. For the following reasons, we disagree and affirm the court's rulings. We consider each allegation in turn.

¶ 44                                1. *Motion to Strike*

¶ 45    We first consider Ryan's argument that the circuit court erred by denying his motion to strike. Specifically, Ryan argues that the court committed reversible error when it implicitly denied his motion to strike by ruling on the merits of Tami's petition for indirect civil contempt in its

12

November 14, 2024, order. In response, Tami argues the court's decision to rule on the merits of the petition for contempt did not constitute reversible error. We agree with Tami.

¶ 46    Where review of a trial court's ruling on a motion to strike raises a question of law, the appropriate standard of review is *de novo*. *Asset Recovery Contracting, LLC v. Walsh Construction Co. of Illinois*, 2012 IL App (1st) 101226, ¶ 101. Interpreting a marital settlement agreement is a matter of contract construction. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 425 (2005). As such, courts seek to give effect to the parties' intent. *Id.* at 426. "The language used in the marital agreement generally is the best indication of the parties' intent [citation], and when the terms of the agreement are unambiguous, they must be given their plain and ordinary meaning." *Id.* Reversible error occurs when an error "appears to have affected the outcome of the trial." (Internal quotation marks omitted.) *Castillo v. Stevens*, 2019 IL App (1st) 172958, ¶ 39 (quoting *Inman v. Howe Freightways, Inc.*, 2019 IL App (1st) 172459, ¶ 157).

¶ 47    Ryan's motion to strike argued that Tami's petition for contempt was facially deficient and "blatantly misrepresent[ed]" the MSA, because it sought to hold him solely responsible for (1) college expenses beyond tuition, books, and required school expenses, (2) post-filing individual debts, and (3) medical bills that the MSA required the parties to split equally. Ryan contended that the petition failed to state a claim as a matter of law and requested sanctions. In response, Tami argued that certain provisions were ambiguous as to the parties' intent and that a hearing was necessary to resolve factual disputes.

¶ 48    On June 25, 2024, the circuit court conducted a full evidentiary hearing, received extensive testimony and exhibits, requested written closing arguments, and took the matter under advisement. In its November 14, 2024, order, the court denied the "counter petitions for findings of indirect civil contempt." Presumably, this included Ryan's motion to strike. The court found

13

that "both parties have played loosely with their own interpretation" of the previous orders. The court ordered each party to bear their own fees and costs. As such, based on our review of the record, we cannot find that the court committed reversible error in "implicitly" denying Ryan's motion to strike.

¶ 49                                    2. *Rule 137 Sanctions*

¶ 50    Ryan also argues that the circuit court abused its discretion when it failed to grant his request for Rule 137 sanctions against Tami. Ryan argues that Tami pursued frivolous claims and that she should have been sanctioned. Ryan argues the circuit court erred by failing to address the issue and by implicitly denying the request for sanctions.

¶ 51    Pursuant to Illinois Supreme Court Rule 137, a trial court, in its discretion, may impose sanctions against a party for filing a pleading that is not well-grounded in fact, not supported by existing law, or by good-faith argument for modification, reversal or extension of the law, or instituted for an improper purpose such as harassment. Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018); *Kuykendall v. Schneidewind*, 2017 IL App (5th) 160013, ¶ 40. Rule 137 allows but does not require the imposition of sanctions. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 15. "The decision regarding the imposition of sanctions under Rule 137 is committed to the sound discretion of the trial court, and its decision will not be overturned absent an abuse of discretion." *Kuykendall*, 2017 IL App (5th) 160013, ¶ 40 (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998)).

¶ 52    In the case at hand, Ryan argued in his motion to strike and closing argument that Tami's petition for contempt and related filings were "frivolous" and "vexatious" because she knew, or should have known, from the plain language of the MSA that Ryan was not solely responsible for the expenses at issue. He relied on Tami's own testimony acknowledging the post-filing debt

clause of the MSA, the provision requiring an equal split of medical expenses, and the cap on tuition. The circuit court, however, reviewed the "voluminous record" and expressly found that "both parties have played loosely with their own interpretation as to what the Court's prior orders, many of which were entered by agreement, required of them by the letter or spirit and neither has been more violative than the other." The court therefore concluded that Tami's pleadings did not rise to the level of sanctionable conduct.

¶ 53    The record does not demonstrate that the court's assessment was arbitrary or ignored recognized principles of law. The court was in the best position to evaluate the parties' credibility, the reasonableness of their interpretations, and whether the filings were driven by improper motive rather than a good-faith belief in the merits of the claims. As such, we cannot find that the circuit court abused its discretion in denying Ryan's request for Rule 137 sanctions.

¶ 54                                   3. *Attorney Fees*

¶ 55    Lastly, Ryan argues that the circuit court abused its discretion by failing to award him reasonable attorney fees for pursuing his March 6, 2024, contempt motion. Tami responds, arguing that without a finding of contempt, the court is under no authority to impose attorney fees. In response, Ryan argues that attorney fees may still be awarded when a party is forced to resort to court proceedings to secure compliance with a court order. We agree with Tami.

¶ 56    "The court may require a contemptuous party to bear the contempt action's reasonable costs and attorney fees." *Edwards v. Pekin Memorial Hospital*, 2023 IL App (3d) 210005, ¶ 49; (citing *47th & State Currency Exchange, Inc. v. B. Coleman Corp.*, 56 Ill. App. 3d 229, 235 (1977)). "The court's power in this regard is incidental to its inherent contempt powers and may be exercised upon a finding of contempt." *Id.* When contempt proceedings do not result in a contempt finding, however, the default rule applies: " 'In the absence of statutory authority or an

15

agreement specifically authorizing them, attorney fees and other ordinary expenses of litigation may not be awarded.' " *Id.* (quoting *ESG Watts, Inc. v. Pollution Control Board*, 286 Ill. App. 3d 325, 338 (1997)).

¶ 57    In the case before us, Ryan obtained a rule to show cause against Tami for her failure to deliver executed deeds necessary for his refinance of the properties. Tami delivered the deeds shortly thereafter, purging herself of any potential contempt. The circuit court did not enter a formal finding of contempt.

¶ 58    In its November 14, 2024, order, the court denied all pending counterpetitions for indirect civil contempt and directed each party to pay their own attorney fees and costs. Ryan contends he is entitled to attorney fees because he was forced to resort to the court process to secure compliance with the MSA. As noted above, an actual finding of contempt is required before the court may shift fees under its contempt power. Because Tami purged the alleged contempt before any finding was made, the default rule—that each party bears its own litigation expenses in the absence of statute or agreement—applies. As such, the court did not abuse its discretion in denying Ryan's request for attorney fees.

¶ 59    We have thoroughly reviewed the record on appeal in this matter. The circuit court made a finding to deny Tami's petition for indirect civil contempt and Ryan's motion for sanctions and attorney fees after considering the facts presented, the evidence introduced, and the arguments made by the parties. The court pointed out "[t]his is the second order in response to endless petitions filed by both parties seeking findings of indirect civil contempt." The court found that both parties "played loosely" with their interpretations and what was required by the MSA. Further, the court found that "neither [party] has been more violative than the other." Based on our review of the record, we find that the court's factual findings were not against the manifest weight

16

of the evidence and the court's ultimate determination to deny Tami's petition for contempt and Ryan's motion for sanctions and attorney fees was not an abuse of discretion.

¶ 60                         III. CONCLUSION

¶ 61    For the reasons stated herein, we affirm the Jasper County circuit court's November 14, 2024, order.

¶ 62    Affirmed.