**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250388-U

Order filed June 12, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| CHRISTOPHER BRUCIAK, | ) | Will County, Illinois, |
| | ) | |
| Petitioner-Appellant | ) | |
| | ) | Appeal No. 3-25-0388 |
| | ) | Circuit No. 18-D-1422 |
| and | ) | |
| | ) | |
| STEFANIE BRUCIAK, | ) | Honorable |
| | ) | Raymond P. McSteen, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Hettel and Justice Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   We lack jurisdiction to review the trial court's order denying petitioner's motions to amend the dissolution judgment and terminate maintenance. We affirm the trial court's orders holding petitioner in indirect civil contempt for failure to pay the correct maintenance amount and granting respondent's motion to modify maintenance but remand for recalculation of the award. Dismissed in part, affirmed in part, and remanded in part.

¶ 2     Petitioner, Christopher Bruciak, appeals from the trial court's orders denying his motion to amend the dissolution judgment and his motion to terminate maintenance and granting

respondent's, Stefanie Bruciak's, motion to modify maintenance and petition to hold Christopher in indirect civil contempt. For the following reasons, we dismiss in part, affirm in part, and remand in part for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4          Christopher and Stefanie were married in 2002 and have two children (born in 2004 and 2006). On August 16, 2018, Christopher filed a petition for dissolution of marriage. On December 20, 2018, the trial court entered a judgment for dissolution of marriage, incorporating the parties' November 18, 2018, marital settlement agreement (MSA) and allocation of parental responsibilities and parenting plan judgment. Section 3.1(B)(i) of article III of the MSA—the article governing maintenance—provided that Stefanie was unemployed and that Christopher shall pay her monthly maintenance as follows,

> "[Stefanie] shall receive **TWO THOUSAND NINE HUNDRED AND SIXTY FIVE and 00/100 DOLLARS ($2,000.00)** per month as and for maintenance commencing upon the entry of the Judgment in a prorated amount. This amount represents [Christopher's] statutory maintenance obligation less [Stefanie's] statutory child support obligation." (Emphasis in original.)

Much of the ensuing litigation focused on the discrepancy in section 3.1(B)(i), *i.e.*, the written amount is $965 more than the numerical amount of $2,000.

¶ 5          Article III also provided in relevant part that: (1) the term of the maintenance was through November 30, 2028; (2) "[t]he maintenance obligation as to amount only shall be subject to a substantial change in circumstances ***"; and (3) maintenance was not due during the term of either party's incarceration. Further, article III provided that the award of maintenance would terminate upon the death of either party, Stefanie's remarriage or entry into a

2

civil union, or Stefanie's "cohabitation with an unrelated male or female adult on a continual conjugal basis as defined under Illinois law." Section 4.1 of article IV of the MSA—the article governing child support and child-related expenses—provided that neither party shall have a child support obligation and that, if the statutory guidelines were followed, Stefanie's monthly child support obligation would have been $874. At the time of the December 20, 2018, dissolution judgment, Stefanie was unrepresented, in jail for theft, and recovering from drug addiction.

¶ 6     On May 13, 2020, Christopher filed a petition to terminate maintenance pursuant to section 510(c) of the Act on grounds that Stefanie "is cohabitating with an unrelated male adult on a continuing conjugal basis as defined under Illinois law[.]" Christopher later withdrew the petition without prejudice but subsequently, on July 28, 2022, filed a motion to terminate maintenance based upon Stefanie's alleged ongoing conjugal relationship.

¶ 7     Meanwhile, on December 21, 2020, Stefanie filed a petition for rule to show cause and for a finding of indirect civil contempt against Christopher for willfully paying the incorrect amount of monthly maintenance, *i.e.*, paying $2,000 per month rather than $2,965 per month. Stefanie stated that the total unpaid maintenance from the December 20, 2018, dissolution judgment through the filing of the contempt petition was $23,160. In his response to the petition, Christopher stated that the discrepancy in the amount of monthly maintenance set forth in the dissolution judgment was a scrivener's error. On March 25, 2021, Christopher filed a "Motion To Amend Scriven[e]r's Error," arguing that the entirety of the record reflected the parties' intent that Christopher pay monthly maintenance in the amount of $2,000. Citing section 3.1(B)(i) of the MSA, Christopher argued that the $2,000 figure represented Christopher's statutory maintenance obligation less Stefanie's statutory child support obligation. Christopher

3

further argued that the transcript of the December 20, 2018, prove-up hearing, where he confirmed his agreement to pay Stefanie $2,000 in monthly maintenance upon her release from jail, supported his position, as did the fact that Stefanie neither objected to the amount of the maintenance payments nor filed her petition for rule to show cause until *after* Christopher filed his petition to terminate maintenance.

¶ 8        A. Christopher's Motions to Amend Scrivener's Error and Terminate Maintenance

¶ 9        Over the course of seven days in February and March 2023, the trial court held a hearing on Christopher's motions to amend scrivener's error and terminate maintenance. Following briefing and argument, on August 28, 2023, the trial court denied both motions. The trial court found, *inter alia*, that the written amount of $2,965 in maintenance controlled pursuant to rules of contract construction and that consideration of the evidence and relevant statutory factors left the "inescapable conclusion that there is, in fact, no de facto husband/wife relationship" that would support Christopher's motion to terminate maintenance. After the trial court's ruling, counsel for Christopher requested "304(a) language, given that there are other pending petitions in the post-decree setting, separate and apart from these two matters." The trial court responded, "[Y]es, 304(a) language. This is a final and appealable order." On August 31, 2023, the trial court entered a written order, providing, *inter alia*, that it had clarified on the record its ruling as it relates to the denial of Christopher's motion to terminate maintenance. However, the transcript of the August 31, 2023, proceeding is not included in the record on appeal.

¶ 10        On October 12, 2023, the trial court entered its written order denying Christopher's motions to amend scrivener's error and terminate maintenance for the reasons stated on the August 28, 2023, and August 31, 2023, records. In addition, the written order specified that "the rules of contract construction shall control Article 3.1(B)(i) of [the] parties' Marital Settlement

4

Agreement" and "the written amount of $2,965.00 (two-thousand nine hundred sixty-five) as and for maintenance shall control over the numerical amount of $2,000.00." The written order further specified that "the Court finds there was no evidence of a de facto husband and wife [relationship] between [Stefanie and Anthony] that would necessitate the termination of Stefanie's maintenance." The October 12, 2023, written order concluded, "This is a final and appealable Order pursuant to Supreme Court Rule 304(a)."

¶ 11                    B. Stefanie's Motion to Enforce the Dissolution Judgment,
                Motion to Modify Maintenance, and Petition for Indirect Civil Contempt

¶ 12        Meanwhile, on December 21, 2021, Christopher filed a motion to increase Stefanie's child support obligation, and, on May 19, 2022, Stefanie filed a motion to increase Christopher's maintenance obligation. In addition (following the trial court's October 12, 2023, order denying Christopher's motions to amend scrivener's error and terminate maintenance), on November 13, 2023, Stefanie filed a motion to enforce the dissolution judgment, seeking past due maintenance in the amount of $46,320 plus interest. And, on January 2, 2024, Stefanie filed a petition for rule to show cause as to why Christopher should not be held in indirect civil contempt for willful failure to comply with the October 12, 2023, order.

¶ 13        The trial court held a hearing on all pending matters on March 3, 2025, and March 4, 2025. Christopher testified that he did not increase his payment to $2,965 per month at the time of the October 12, 2023, order because Stefanie's motion to increase maintenance and his motion to modify child support remained pending. Christopher's purported understanding was that the October 12, 2023, order designated which amount "controlled" but did not *direct* him to increase the monthly maintenance payment to $2,965. Nonetheless, Christopher began to pay the increased amount in November 2024 pursuant to an agreed withholding order.

5

¶ 14    Regarding the parties' professional background and earnings, Christopher testified that he received an associate's degree from Joliet Junior College in 2000 and has worked as an electrical manager at Citgo Petroleum for 19 years. During that time, his salary had continually increased (earning $325,000 in 2024). Stefanie testified that she graduated from high school and completed some courses in early childhood development. During the parties' marriage, Stefanie worked at a daycare for approximately two years and as a substitute teacher. Since the dissolution judgment, Stefanie worked at a bank for two and a half years as a teller earning an hourly rate of $16 but was terminated for theft. She subsequently worked at a cleaning service and gas station, earning up to an hourly rate of $17. Stefanie testified that she could not financially afford to obtain additional education or training.

¶ 15    The parties testified regarding their living situations and finances. Whereas Christopher owned a house and had significant personal property and retirement assets, Stefanie testified that she had been living with her father for approximately two years and was not pursuing employment because her father was ill and she provided full-time care for him. In addition, Stefanie testified regarding the debt she had incurred since the dissolution judgment. She owed $10,822 to the IRS from liquidation of that portion of Christopher's retirement savings ($158,045), which she had been allocated in the MSA. She also owed $11,715 pursuant to a November 7, 2024, sentencing order for a felony theft conviction. Further, Stefanie's mother assisted with the children's expenses, and Stefanie periodically repaid her.

¶ 16    On June 20, 2025, the trial court granted the pending motions, setting forth extensive findings. First, in granting Stefanie's motion to enforce the dissolution judgment, the trial court noted that Stefanie was released from custody and transferred to a treatment facility on February 21, 2019, at which point Christopher's maintenance obligation began. However, Christopher did

6

not begin to pay the correct amount of maintenance until December 1, 2024—amounting to a total underpayment of $66,903.45 plus statutory interest in the amount of $21,157.38. Second and relatedly, the trial court granted Stefanie's petition for rule to show cause and found Christopher in indirect civil contempt, finding that Christopher presented no credible evidence as to why he did not increase the monthly maintenance payment following the trial court's October 12, 2023, order.

¶ 17  Third, the trial court granted Stefanie's motion to modify maintenance, finding significant evidence to support a substantial change in circumstances. Namely, Christopher's annual income had increased from $167,800 at the time of the December 18, 2018, dissolution judgment to $325,000 in 2024. In addition, Christopher was now seeking child support from Stefanie, and Stefanie had depleted the assets that she was awarded in the dissolution judgment. The trial court noted that many relevant facts were concealed from the trial court at the December 18, 2018, prove-up hearing and then proceeded to analyze the initial maintenance factors under section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a) (West 2018)) and the modification factors under section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2018)).

¶ 18  To begin, Christopher was awarded over 80% of the equity in the marital residence, his entire defined benefit plan (16 years of which were marital property), his vehicle (with Stefanie paying half of its indebtedness), the majority of the personal property in the marital residence, and multiple other recreational vehicles. In contrast, Stefanie was awarded her personal property, a "significantly below guideline maintenance award" (allowing Christopher to retain 90% of the marital income at the time), and a 2014 vehicle.

7

¶ 19       As to the parties' needs, the trial court found that Christopher has an excess of $13,619 from his stated needs whereas Stefanie's monthly expenses include $2,800 in living expenses, $1,000 in debt payments, and any amounts owed on outstanding attorney fees. As for the parties' realistic present and future earning capacities, the trial court noted that Christopher's total income had doubled over the last 10 years, and there were no impairments to Christopher's earning capacity. In contrast, Stefanie has a high school education, was responsible for the majority of domestic duties during the parties' marriage and worked part-time when the children were school age, held only held minimum-wage employment since entry of the dissolution judgment, and is a recovering drug addict.

¶ 20       In addition, due to the "grossly under guideline maintenance award," Stefanie was effectively denied an opportunity to seek education or training and was forced to seek minimum-wage employment. The trial court noted that the record reflected that Stefanie "made a multitude of poor decisions in her life that have contributed significantly to her current situation" and that, at the time of the dissolution judgment, she was an incarcerated addict suffering withdrawal symptoms and awaiting treatment. The trial court further found that the duration of the initial maintenance award was inconsistent with the statutory guidelines at the time—an issue not raised at the prove-up hearing.

¶ 21       Regarding the parties' conditions, the trial court noted that Christopher was 51 years old, earned over $325,000 in 2024, was well established in his career, has minimal debt, and has accumulated significant retirement assets. In contrast, Stefanie was 48 years old, a recovering drug addict with a high-school education, owns no real estate, has no particular vocational skills, has been employed at near minimum wage since the dissolution judgment, has no estate or retirement assets, and has significant debt. Noting that it was through Stefanie's own misconduct

8

that she lost her job at the bank, the trial court set Stefanie's income for maintenance purposes at her highest previous annual earnings ($28,116).

¶ 22    In considering any other factor, the trial court concluded that the purportedly agreed dissolution judgment was unconscionable and noted circumstances suggesting fraud and coercion, including that Stefanie was under duress when she signed it as an "incarcerated drug addict withdrawing cold turkey without treatment," the judgment was not consistent with the statutory guidelines that existed at the time and did not provide for a review of maintenance; the judgment did not award any portion of Christopher's defined benefit plan to Stefanie; the judgment awarded Stefanie $30,000 in equity from the marital residence, which Christopher sold two years later and netted $150,000; and Christopher excluded over $70,000 of his income from the maintenance calculation at the time of the prove-up hearing. In sum, the trial court concluded that the statutory factors strongly favored an award of increased maintenance and noted its intention to deviate upward from the statutory guidelines. The trial court calculated the total arrearage of maintenance due ($253,148.08) and awarded prospective monthly maintenance in the amount of $7,677.

¶ 23    Regarding the fourth and final pending motion—Christopher's motion to modify child support—the trial court granted the motion and recalculated child support based upon the modified maintenance calculations. Accordingly, the trial court found that Stefanie owed Christopher $33,457 in retroactive child support (which terminated by law on June 1, 2024, upon emancipation of the parties' youngest child) to be subtracted from the retroactive maintenance award.

¶ 24    On July 31, 2025, the trial court entered a written order in accordance with its findings. Regarding maintenance, the trial court "found it appropriate to modify maintenance and to

9

deviate upward from the statutory guidelines on the current maintenance to effectuate the total amount of statutory maintenance [Stefanie] would have been entitled to under the guidelines that existed at the time of the entry of the Judgment from February 21, 2019, through June 30, 2025." The trial court noted that it "does not have the authority to extend [Stefanie's] maintenance or to make the maintenance award reviewable" and stated that "[t]he original award of maintenance was far below guidelines and was not simply a statutory calculation of maintenance less a statutory calculation of child support." Thus, the trial court "reviewed the relevant statutory guidelines that were in place at the time of the entry of the original judgment (tax deductible maintenance) and used the parties' actual year-end income figures *** for the relevant periods to determine what maintenance was due and owing each year from the original date of entry of judgment through and including June 30, 2025." The trial court then calculated the amount of child support that would be owed by Stefanie and found that the total retroactive maintenance owed to Stefanie was $253,148.08 and that the total retroactive child support owed by Stefanie was $33,457. Accordingly, judgment was entered in favor of Stefanie and against Christopher in the amount of $219,691.08, and Stefanie was awarded prospective monthly maintenance in the amount of $7,677. To purge his contempt, Christoper was ordered to begin paying a monthly sum of $1,000 in addition to his current maintenance obligation until the maintenance arrearage ($66,903.45) and interest ($21,157.38) was paid in full.

¶ 25       On August 8, 2025, Christopher filed a notice of appeal.

¶ 26                                II. ANALYSIS

¶ 27       Christopher's notice of appeal states that he appeals from the trial court's July 31, 2025, order increasing maintenance and holding him in indirect civil contempt; the October 12, 2023, order denying his motion to amend scrivener's error and denying his motion to terminate

10

maintenance; and the August 31, 2023, order clarifying its oral ruling as it relates to the denial of the motion to terminate maintenance. Before turning to the merits of the parties' arguments, we address our jurisdiction.

¶ 28                                                   A. Jurisdiction

¶ 29        Stefanie argues that we lack jurisdiction to review the October 12, 2023, order, noting that the order contained a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Specifically, the October 12, 2023, written order concluded, "This is a final and appealable Order pursuant to Supreme Court Rule 304(a)." Accordingly, Stefanie argues that Christopher was required to appeal the order within 30 days pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) ("The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from ***.").

¶ 30        Rule 304(a) permits appeals from final judgments that do not dispose of an entire proceeding, providing in relevant part:

            "If multiple parties or multiple claims for relief are involved in an action, an
            appeal may be taken from a final judgment as to one or more but fewer than all of the
            parties or claims only if the trial court has made an express written finding that there is no
            just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff.
            Mar. 8, 2016).

Accordingly, a Rule 304(a) finding makes a final order appealable despite other pending claims or parties. *Id.*; *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 24.

¶ 31        Preliminarily, although not addressed by the parties, we observe that the order here provided that it was a "final and appealable Order pursuant to Supreme Court Rule 304(a)," but did *not* include a finding that there was no just reason for delaying either enforcement or appeal

11

or both, as required by Rule 304(a). See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 544 (2011) ("A circuit court's declaration that an order is 'final and appealable,' without reference to the justness of delay, or even reference to immediate appealability, evinces no application of the discretion Rule 304(a) contemplates."). However, the absence of this precise language is not fatal to our jurisdiction if the record demonstrates the trial court's intention to invoke Rule 304(a). See *In re Marriage of Morgan*, 2019 IL App (3d) 180560, ¶ 12 ("Case law concerned with requisite Rule 304(a) findings allow for the invocation of the rule if it is clear from the record it was the trial court's intent."). Here, the transcript from the August 28, 2023, hearing reflects that, following the trial court's ruling denying Christopher's motions to amend scrivener's error and terminate maintenance, Christopher's counsel requested "304(a) language, given that there are other pending petitions in the post-decree setting, separate and apart from these two matters." The trial court responded, "[Y]es, 304(a) language. This is a final and appealable order." Moreover, the trial court's October 12, 2023, written order specifically identifies "Supreme Court Rule 304(a)" in providing that it was a final and appealable order. Thus, the record reflects application of the discretion contemplated by Rule 304(a) and the trial court's intention to make a Rule 304(a) finding.

¶ 32        Accordingly, given the Rule 304(a) finding in the October 12, 2023, order, Christopher was required to appeal the order within 30 days. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); *Tuna v. Airbus, S.A.S.*, 2017 IL App (1st) 153645, ¶ 26 ("Where a party fails to file a notice of appeal within 30 days of a finding pursuant to Rule 304(a), the judgment becomes final and prevents litigants from challenging that judgment in an appeal from a later order."). Christopher did not file his notice of appeal until almost two years later on August 8, 2025. Accordingly, his notice of appeal was untimely, and we lack jurisdiction to review the order. See *Secura*

12

*Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 217 (2009) ("[T]he timely filing of an appeal is both jurisdictional and mandatory ***.").

¶ 33    For this same reason, we likewise lack jurisdiction to review the earlier August 31, 2023, order which stated that the trial court had clarified on the record its ruling as it relates to the denial of Christopher's motion to terminate maintenance. Parenthetically, we note that the absence of the August 31, 2023, transcript would otherwise necessitate the presumption that the trial court acted in conformity with the law and that its ruling had a sufficient factual basis. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 34    Christopher argues that we have jurisdiction to review the October 12, 2023, order because the order was a procedural step in the progression leading to entry of final judgment, citing *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 2014 IL App (1st) 121111, ¶ 25 ("An appeal from a final judgment draws into issue all prior *interlocutory* orders which constituted a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken.") (Emphasis added.). This argument ignores that the October 12, 2023, order was a *final* order (denying Christopher's motion to amend scrivener's error and denying his motion to terminate maintenance on the basis of Stefanie's alleged ongoing conjugal relationship), not an interlocutory order. The order contained a Rule 304(a) finding, thereby requiring Christopher to appeal the order within 30 days. Having failed to do so, we lack jurisdiction to review the propriety of the order.

¶ 35                                B. Indirect Civil Contempt

¶ 36    Christopher next challenges the trial court's finding that he was in indirect civil contempt for failure to pay increased maintenance following the October 12, 2023, order. "A finding of

13

indirect civil contempt relies on the existence of a court order and willful disobedience of that court order." *Sinkus v. BTE Consulting*, 2017 IL App (1st) 152135, ¶ 29. Indirect civil contempt consists of noncompliant conduct occurring outside of the judge's presence. See *People v. Weinstein*, 2024 IL App (2d) 230062, ¶ 106. Failure to comply with a court order amounts to *prima facie* evidence of contempt. *Country Mutual Insurance Co. v. Hilltop View, LLC*, 2014 IL App (4th) 140007, ¶ 26. Once the petitioner satisfies the initial burden to show by a preponderance of the evidence that the alleged contemnor has violated a court order, the burden shifts to the alleged contemnor to show that the violation was not willful or contumacious and that the contemnor had a valid excuse for failing to follow the order. *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107-08 (2006). We will not disturb the trial court's determination that a party is in contempt unless the finding is against the manifest weight of the evidence or the record indicates an abuse of discretion. *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 22. A court abuses its discretion only when its "decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 37     Christopher argues that the underlying dissolution judgment was unclear and the October 12, 2023, order lacked a specific directive to pay the increased maintenance. However, Christopher was ordered to pay maintenance pursuant to the dissolution judgment, and the trial court resolved any discrepancy in the underlying dissolution judgment when it denied Christopher's motion to amend scrivener's error and held that the written amount of $2,965 controlled pursuant to principles of contract construction. Failure to comply with the October 12,

14

2023, order was *prima facie* evidence of contempt. See *Country Mutual Insurance*, 2014 IL App (4th) 140007, ¶ 26. The burden then shifted to Christopher to establish that the violation was not willful or contumacious and that he had a valid excuse for failing to follow the order. See *Marriage of Charous*, 368 Ill. App. 3d at 107-08. The trial court explicitly found that Christopher presented no credible evidence as to why he did not increase the monthly maintenance payment following the October 12, 2023, order because Stefanie's motion to increase maintenance and his motion to modify child support remained pending. However, these matters did not impact the amount of his current maintenance obligation; to the contrary, Stefanie was seeking (and ultimately received) increased maintenance. In sum, Christopher has presented no persuasive basis upon which to conclude that the finding of indirect civil contempt was against the manifest weight of the evidence or that the record indicates an abuse of discretion. See *id.*

¶ 38                                    C. Maintenance

¶ 39         Finally, Christopher challenges the grant of Stefanie's motion to increase maintenance and award of increased maintenance, arguing that the trial court abused its discretion in applying the statutory modification factors for maintenance. In determining whether a modification of maintenance is warranted, a trial court considers the initial maintenance factors under section 504(a) of the Act (750 ILCS 5/504(a) (West 2018)) and the modification factors under section 510(a-5) of the Act (750 ILCS 5/510(a-5) (West 2018)). *Blum v. Koster*, 235 Ill. 2d 21, 35-36 (2009). No single statutory factor is determinative, and the trial court is not limited to reviewing the factors outlined in the statute. *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 651 (2008). The trial court may deviate from the guideline maintenance amount, after consideration of all relevant factors, if the court determines that the amount is not appropriate. 750 ILCS 5/504 (b-1)(2) (West

2018). In doing so, the court "shall state in its findings the amount of maintenance (if determinable) or duration that would have been required under the guidelines and the reasoning for any variance from the guidelines." *Id.* § 504(b-2)(2). A trial court's decision to modify maintenance will not be reversed absent an abuse of discretion. *Blum*, 235 Ill. 2d at 36. A trial court's factual findings regarding maintenance will not be reversed unless they are against the manifest weight of the evidence. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 30.

¶ 40        Christopher contends that Stefanie made minimal efforts to become self-supporting and challenges the claim that she could not afford to pursue additional education given that she withdrew in excess of $125,000 from her share of retirement assets during the period of 2020 through 2022. He also notes that he gratuitously paid maintenance during months when Stefanie was incarcerated. Further, Christopher argues that the trial court improperly included uncertain bonus income in calculating his 2024 total income, improperly considered his current income as indicative of the standard of living during the marriage, and that the award of $7,677 in monthly maintenance amounted to a windfall to Stefanie. However, none of these arguments amount to a basis upon which to hold that the increased maintenance award was an abuse of discretion or that the trial court's factual findings were against the manifest weight of the evidence.

¶ 41        In explicitly considering the relevant statutory factors, the trial court noted that Christopher was 51 years old, earned over $325,000 in 2024 (with his total income doubling over the last 10 years), was well established in his career, had minimal debt, and had accumulated significant retirement assets. In contrast, Stefanie was 48 years old with limited earning capacity and no particular vocational skills, held only held minimum-wage employment since entry of the dissolution judgment, has no estate or retirement assets, and has significant debt. To the extent the trial court made credibility determinations in reaching these conclusions, we defer to those

findings given the trial court's superior position to observe witnesses and review the evidence. See *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004).

¶ 42 Moreover, we note that, on December 15, 2025, Christopher filed a motion to supplement the record with the exhibits from the underlying hearing. We granted the motion on December 26, 2025, ordering the supplemental record to be filed on or before January 2, 2026, and stating that "it is the responsibility of Appellant's Counsel to confirm with the circuit clerk's office that the required documents are timely filed or to seek any necessary extensions of time." A supplemental record was never filed. Accordingly, we resolve any doubts arising from incompleteness of the record against Christopher and presume that the trial court's ruling conformed to the law. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 43 As a final matter, however, Christopher argues that the trial court improperly treated Stefanie's motion to modify maintenance as a petition to vacate the dissolution judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2024)), noting the unconscionability of the dissolution judgment and circumstances suggesting fraud and coercion. In this regard, he challenges the upward deviation and award of increased maintenance dating back to the dissolution judgment. In entering judgment in Stefanie's favor against Christopher in the amount of $219,691.08 (total retroactive maintenance of $253,148.08 less total retroactive child support of $33,457), the trial court explicitly noted that the original maintenance award was below guidelines and thus "reviewed the relevant statutory guidelines that were in place at the time of the entry of the original judgment (tax deductible maintenance) and used the parties' actual year-end income figures *** for the relevant periods to determine what maintenance was due and owing each year from the original date of entry of judgment through and including June 30, 2025." The trial court also found it appropriate to deviate upward from the statutory

17

guidelines "on the current maintenance to effectuate the total amount of statutory maintenance [Stefanie] would have been entitled to under the guidelines that existed at the time of the entry of the Judgment from February 21, 2019, through June 30, 2025."

¶ 44       We agree with Christopher that the trial court erred in considering maintenance dating back to the date of the dissolution judgment, rather than from the date of Stefanie's May 19, 2022, motion to modify maintenance. Section 510(a) of the Act provides that, with certain exceptions not relevant here, "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2018). Accordingly, while we affirm the grant of Stefanie's motion to increase maintenance, we remand this matter in part for recalculation of the prospective increased maintenance award and the $219,691.08 judgment to exclude consideration of any time period prior to May 19, 2022—the date Stefanie filed her motion to modify maintenance. In doing so, we also remand for recalculation of Stefanie's child support obligation based upon the modified maintenance obligation.

¶ 45                                          III. CONCLUSION

¶ 46       For the reasons stated, we lack jurisdiction over Christopher's appeal from the October 12, 2023, and August 31, 2023, orders and dismiss that portion of Christopher's appeal. However, we have jurisdiction over the remainder of the appeal and affirm in part the July 31, 2025, judgment of the circuit court of Will County but remand in part for further proceedings in accordance with our holding.

¶ 47       Dismissed in part; affirmed in part; and remanded in part with instructions.

18